546 P.2d 382

**Glen BRIGGS et al., Respondents,**

v.

**GOLDEN VALLEY LAND & CATTLE COMPANY, a corporation, and Golden Valley Mutual Water Company, a corporation, Appellants,**

**and**

**Ore-Ida Foods, Inc., et al.**

**No. 11717.**

Supreme Court of Idaho.

Feb. 11, 1976.

---

Lloyd J. Walker, of Walker & Kennedy, Twin Falls, for appellants.

Joseph Novak, Salt Lake City, Utah, Herman E. Bedke, of Nielson & Bedke, Burley, for respondents.

BAKES, Justice.

This appeal presents a variety of questions concerning (1) the proper procedure and forum for securing review of an order of the director of the Idaho Department of Water Resources administering ground water rights in a designated critical ground water area, (2) the authority of the Idaho Department of Water Resources *vis-a-vis* the district courts to determine which underground water users have water rights of a priority which entitles the users to withdraw water from the aquifer within a designated critical ground water area, and (3) the administration of ground water rights within a designated critical ground water area. We reverse the order of the district court restraining the director of the Idaho Department of Water Resources from administering underground water rights contrary to an earlier decree of the district court; set aside the judgment of the district court vacating the director's order administering those rights; and remand the cause to the district court for further proceedings.

## HISTORY OF THE LITIGATION

This appeal arises from the same ground water rights dispute we considered in the case of *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973). All the parties to this appeal were parties to that appeal or are successors in interest to parties to that appeal. This litigation has the following history.

In 1965 several ground water users in the Cottonwood Creek-Buckhorn Creek area of Cassia County brought suit to enjoin other ground water users in the area from pumping from their wells until such time as the plaintiffs' wells resumed normal production. In February of 1969 the case was tried in the district court of Cassia County. Voluminous hydrological and other data were introduced into evidence. On October 5, 1971, the district court entered its amended findings of fact, conclusions of law and decree. The district court found that the parties before it had been withdrawing water from a common aquifer that was being recharged at an average rate of 5500 acre feet per year and the court held that Idaho's Ground Water Act, I.C. §§ 42–226 *et seq.,* forbade the "mining" of water from the aquifer, i. e., the Act limited the ground water users on the aquifer to a total annual withdrawal from the aquifer of 5500 acre feet, the average annual recharge of the aquifer. The court also made findings of fact concerning the ground water rights and priorities of each of the parties to the action. Although the water rights in question were licensed in terms of a volume of water per second, the court quantified the various rights on an annual basis, i. e., for each water right under consideration it determined the volume of water in acre feet that could be annually extracted from the aquifer under that right. See footnote 3, *infra.* In order to prohibit "mining" of the aquifer, the court enjoined further pumping from the aquifer by those water users whose ground water rights were not among those which the court had determined to be the senior 5500 acre feet of annual ground water rights licensed to extract ground water from the aquifer. The judgment of the district court was appealed and our decision in that appeal is reported in *Baker v. Ore-Ida, supra.*

The appellants in *Baker v. Ore-Ida* made certain assignments of error challenging the constitutionality of the Idaho Ground Water Act and contesting the trial judge's findings of fact and conclusions of law with respect to (1) the acquisition of ground water rights by prescription or adverse use, (2) the effect of a change in a point of diversion or place of use upon a party's water right and the priority of such rights, and (3) the sufficiency of the evidence to support the findings that the parties had been extracting water from a common aquifer which was being recharged at the rate of 5500 acre feet per year. The appellants also assigned as error the failure of the trial court to defer primary jurisdiction in the matter to the state reclamation engineer.[1]

The trial court determined that there was an annual water right associated with each water license and awarded as that right the volume of water, quantified in acre feet, that would have been withdrawn from the aquifer had water been pumped at the licensed rate for 24 hours a day for a 180 day period (Finding of Fact XVII, Clk.Tr. Vol. II, p. 416, *Baker v. Ore-Ida*

---

1. In 1970 the Department of Reclamation was renamed the Department of Water Administration and the State Reclamation Engineer's position retitled Director of the Department of Water Administration. 1970 I.S.L., ch. 12. In 1974 the Department of Water Administration was renamed the Department of Water Resources, and the position of Director of the Department of Water Administration retitled Director of the Department of Water Resources. 1974 I.S.L., ch. 20. I.C. §§ 42–1801, –1801a, –1804. The department and the department head shall be referred to in this opinion by the names by which they were known at the time under discussion.

*Foods, Inc., supra*). The award was not based upon findings that water had been withdrawn and applied to beneficial use at the licensed rate for 24 hours a day for a 180 day period. No party to the first appeal assigned this method of calculation of an annual water right as error, nor did any party assign as error the trial court's conclusion that an annual water right could be associated with each license, i. e., that a water right licensed in terms of a volume of water per second could be quantified as a right to a volume of water per year. Moreover, the trial court made no finding of the number of days that water had been pumped under the licenses, either for a given year or as an average over the years, or whether water had been applied to beneficial use at the licensed rate. No assignments of error were made regarding the absence of such findings.[2]

In *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 513 P.2d 627 (1973), we affirmed the decision of the district court with regard to the issues raised by the assignments of error. With the exception of the assignment of error concerning the doctrine of primary jurisdiction, we reached the merits of all the assignments of error and upheld the trial court in all respects. We did not reach the issue of whether the district court should have found primary jurisdiction in the Department of Water Administration to determine the water rights of the parties involved because we said:

"This point need not be considered further because the trial court effectively mooted the primary jurisdiction question by relinquishing the entire matter to the IDWA for administration and possible future modification." 95 Idaho at 586, 513 P.2d at 638.

Before the appeal was concluded the matter had been relinquished to the IDWA by the district court, and the director apparently concluded that he had primary jurisdiction to make findings of the parties' water rights and, upon the petition of Golden Valley, he conducted a hearing commencing April 12, 1972, to determine which water users held licenses with a priority that entitled the licensees to pump from the aquifer. The petition of Golden Valley raised three issues: (1) the anticipated average rate of annual recharge; (2) the

---

2. The following important questions were thus not considered by this Court in the original appeal in *Baker v. Ore-Ida* because no assignment of error was directed to these points:

1. If a water license has been issued by the state reclamation engineer describing the water right as "the amount of water . . . actually needed and beneficially used . . . and shall not exceed 0.55 cubic feet per second," as did for example the water license No. G–27866 issued to respondent Briggs, was the district court correct in quantifying that water right in terms of acre feet per year?

2. Assuming that such a water right may be quantified as an annual water right, does such an annual decreed water right measured in acre feet per year constitute "water in the bank" which the licensee may either use or store for future use and, if not used during the year, is nevertheless not subject to use by a junior appropriator?

3. Assuming that a water right may be quantified by decree in terms of acre feet per year, does a water license which describes the right only in terms of cubic feet per sec-

ond, with no duration stated, constitute *prima facie* evidence under I.C. § 42–220 that water has been applied to beneficial use at the licensed rate for every day of an irrigation season?

4. If an annual water right may be quantified by decree in terms of acre feet per year and if a license is not *prima facie* evidence under I.C. § 42–220 that the licensee has applied water to beneficial use at the licensed rate for every day of an irrigation season, what evidence must the licensee introduce to quantify an annual water right in acre feet per year, where the license which has been granted is expressed only in terms of a flow in cubic feet per second?

Although in our opinion in *Baker v. Ore-Ida* we recited the method by which the district court calculated and awarded annual water rights, measured in terms of acre feet per year, to licensees who were licensed to withdraw water at a rate given in terms of cubic feet per second, the foregoing issues were not raised by the parties and accordingly were not decided by this Court.

total amount which may be pumped in a single year; and (3) the amount of water that the senior appropriators can efficiently put to beneficial use. At the hearing the director considered the record from the trial held before the district judge and the evidence introduced at the hearing before him and made his own findings of fact and conclusions of law rather than accepting those of the district court. The director calculated an annual water right associated with each ground water license in a manner which may be summarized as follows:

(1) The director's premise in determining the licensees' water rights was that an annual water right associated with each license should be awarded based upon the historical amount of pumping under that license rather than upon the maximum amount of water that could have been withdrawn at the licensed rate during the irrigation season. Using this premise, he calculated the annual water right in the following manner:

(a) Rather than assuming that water had been pumped at the licensed rate and applied to beneficial use at the licensed rate for a 24 hour period for 180 days a year, the director examined the power company records of the pumps associated with each license in order to determine the hours or days that the pump was in operation each year.

(b) The director used the following assumption to determine the rate at which water was pumped: a licenseholder pumped at the licensed rate if he used the maximum number of kilowatts at his demand.

(c) Thus, by dividing the total number of kilowatts at the licenseholder's demand into the total number of kilowatt hours of energy consumed in a year by the pumps associated with the license, the director purported to calculate the number of hours during the year that water was pumped at the licensed rate, and, by dividing by 24, the number of days during the year that water would have been pumped under the license had it been pumped at the licensed rate for 24 hours a day.

(d) Next, for each year for which power company records were available, the director used the method described in subparagraph (c) to determine the number of days during the year that the licensee had pumped at the licensed rate. He then calculated the average number of days per year that the wells were pumped at the licensed rate for every consecutive five year period for which power company records were available.

(e) Finally, for each license the director selected the highest of the five year averages calculated as described in subparagraph (d), computed the volume of water that would have been pumped had water been pumped at the licensed rate for 24 hours a day for that number of days, and found this volume of water to be the annual water right associated with each license, expressed in terms of acre feet per year.

(2) Next, based upon the premise that in dry years good farming practice requires an irrigator to use more than his annual water right as calculated in subparagraphs 1(a)–(e) while in wet years an irrigator does not need to use his full annual water right, the director incorporated the following plan into his order in order to allow irrigators the flexibility necessary to adjust their water rights to their water needs in a given year: Rather than restricting water users to an annual use of no more than the volume of water equal to the annual water right as determined in subparagraphs 1(a)–(e), the director's order allowed the water users to pump any amount of water necessary in a given year so long as the water user did not pump over five times his annual water right in any consecutive five year period.

The director determined that the maximum length of the pumping season had been between 150 and 160 days, and that the annual water right associated with each license was 28% to 38% less than that awarded by the district court.[3]

Glen and Hazel Briggs, husband and wife, who were parties to *Baker v. Ore-Ida,* and Joe Tugaw, the successor in interest of Bill and Marie Brockman, who were parties to *Baker v. Ore-Ida,* petitioned the district court of Cassia County, appealing from the order of the director, alleging that the director had acted arbitrarily and capriciously and was without jurisdiction or authority to issue his order and praying that the director's order be vacated and

that a writ of prohibition be issued ordering him to cease administering water rights in the area contrary to the decree of the district court that we considered on appeal in *Baker v. Ore-Ida.* Their petition named R. Keith Higginson, the director of the Idaho Department of Water Administration, Golden Valley Land & Cattle Co., Golden Valley Mutual Water Co., and several other water users as respondents.

The director, Higginson, answered the petition, admitting that he had recalculated the water rights and issued the order in question, but denying that he had exceeded his authority in doing so. Golden Valley Land & Cattle Co. and Golden Valley Mutual Water Co., which were parties to *Bak-*

3.

### TABLE OF DECREES

| Owner [1] | Pole No. | License | Licensed Amt. in cfs | Dist. Ct.'s yearly acre-footage [3] | Highest 5 yr. average days pumping [7] | DWA's average yearly acre-footage [8] |
|---|---|---|---|---|---|---|
| Briggs-Brockman | 205 | G–20805 | 1.64 | | | |
| | | G–21359 | 3.30 [2] | | | |
| | | G–27866 | .55 | 1982 [4] | 112.66 [4] | 1233 [4] |
| Golden Valley | 208 | G–27908 | 3.56 | 1271 | 138.58 | 978 |
| Baker-Poulton | 339 | G–27987 | 4.00 | 1428 | 130.91 | 1038 |
| Baker-Poulton | 214 | G–28052 | 6.31 | 819 [5] | 126.43 | 1582 |
| Golden Valley | 211 & 348 | G–28374 | 13.50 | 0 [6] | | 669 [9] |

[1] In order of priority, beginning with the earliest. See footnote 1, Baker v. Ore-Ida, 95 Idaho at 577, 513 P.2d at 629.

[2] The DWA found that this license was in fact for 3.33 cfs.

[3] This figure is calculated by multiplying the licensed amount by the number of seconds in a day (86,400) by 180 days (representing continuous pumping for 180 days), and dividing by 43,560, the number of cf in an acre-foot. Simplified, it equals 240/121, or 1.9835, the number of acre feet of water generated by a 1 cfs flow for 24 hours, times the number of days, or 180. See footnote 2 in Baker v. Ore-Ida, 95 Idaho at 578, 513 P.2d at 630.

[4] Total for all licenses operating on pole 205.

[5] The volume of water associated with the Baker-Poulton license G–28052 under the formula of note 3 is greater than this, but this is the amount that is remaining after prior rights have been satisfied out of the 5500 acre-foot annual allotment.

[6] Golden Valley's license G–28374 had no rights under this decree because prior rights exhausted the full 5500 acre-foot allotment.

[7] This is the highest average annual number of days of pumping done at a well for any five year period, as calculated by the DWA from power company records.

[8] This figure is calculated by multiplying the licensed amount by the average number of days for which it was used, licensed amount times 1.9385 (the cfs-to-acre feet per day conversion factor) times the number of days.

[9] The volume of water associated with Golden Valley's license G–28374 under the formula of note 8 is greater than this, but this is the amount remaining after prior rights have been satisfied out of the 5500 acre-foot annual allotment.

*er v. Ore-Ida,* filed a motion to dismiss on the grounds, among other things, that the petitioners had not filed their notice of appeal in the proper county and that the district court in Cassia County lacked jurisdiction over the subject matter. The district court denied this motion to dimiss. The two companies then filed an answer listing as a defense, among other things, that the district court in Cassia County did not have jurisdiction to hear the appeal from the decision of the director. The Briggses and Tugaw moved for summary judgment, and the director, Higginson, filed a cross motion for summary judgment.

The district court granted the Briggs-Tugaw motion for summary judgment and denied Higginson's motion for summary judgment. It held that the director of the Department of Water Administration "ha[d] no authority or jurisdiction to alter, change or modify the water rights of the respective parties as adjudicated in the final Amended Decree of this Court dated October 1, 1971 . . . and . . . affirmed by the Supreme Court of Idaho in its Opinion filed and dated July 26, 1973 and reported in 95 Idaho 575, 513 P.2d 627." (Order and Judgment, Clk.Tr., pp. 75–76). The district court "enjoined and restrained" Higginson from administering the water rights pursuant to his order and further "enjoined and restrained [him] from administering the distribution of the waters [involved] contrary to or inconsistent with the said final Amended Decree dated October 1, 1971 . . . ." (*Id.,* p. 77).

From this decision of the district court, Golden Valley Land & Cattle Co. and Golden Valley Mutual Water Co. have appealed. (Hereinafter these two companies shall be referred to together as "Golden Valley.") The other parties participating in this appeal are respondents Briggs and Tugaw. Neither Higginson nor the other water users who were parties to the appeal before the district court from the director's order have participated in this appeal.

## FORUM AND PROCEDURE

*Jurisdiction of the district court of Cassia County to hear the appeal from the director's decision.* Golden Valley's first assignment of error is that the trial court erred in denying its motion to dismiss the Briggs-Tugaw petition, alleging that the petition was filed in the wrong county. Golden Valley argues that if the appeal was taken under the Administrative Procedure Act, I.C. § 67–5201 *et seq.,* the appeal could only have been filed in Twin Falls County, the county where the hearing was held, or in Ada County, the county where the decision was rendered. I.C. § 67–5215(b). Alternatively, Golden Valley argues that if the appeal was taken pursuant to the Ground Water Act, I.C. § 42–226 *et seq.,* that the appeal must be commenced "by serving a notice of appeal upon the director of the department of water resources", I.C. § 42–237e, which Golden Valley in its brief alleges was not done.

In *Mills v. Swanson,* 93 Idaho 279, 460 P.2d 704 (1969), this Court held that "the legislature by passage of the Administrative Procedure Act . . . did not intend to abolish those methods of review already in existence." 93 Idaho at 281, 460 P.2d at 706. Thus, respondents Briggs and Tugaw could have proceeded under either act. However, under whichever act the respondents chose to proceed, this Court has consistently held that compliance with the procedure for perfecting an appeal is a jurisdictional requirement, *Blinzler v. Andrews,* 95 Idaho 769, 519 P.2d 438 (1973), and this requirement is applicable in appeals to the district court as well as in appeals to the Supreme Court. *In re Wellard,* 97 Idaho 197, 541 P.2d 621 (1975). I.C. § 67–5215(b) requires the appeal to be filed "either in the county in which the hearing was had or the county in which the final decision of the agency was made . . . ." Since neither the hearing was held nor the decision made in Cassia County, the filing of the appeal from the director by respondents Briggs and Tugaw in Cassia County could not have perfected

an appeal under the Administrative Procedure Act, I.C. § 67–5215(b).

■ Golden Valley argues that the appeal of respondents Briggs and Tugaw cannot be sustained under I.C. § 42–237e[4] of the Ground Water Act. They claim that the appeal was not commenced by "serving a notice of appeal upon the director of the department of water resources . . .", but rather that the respondents Briggs and Tugaw filed the appeal and a petition for a writ of prohibition with the clerk of the district court of Cassia County seeking to restrain the director. This Court has no way of knowing whether the respondents Briggs and Tugaw complied with the provisions of I.C. § 42–237e "by serving a notice of appeal upon the director" because the district court apparently granted summary judgment in favor of the respondents, as appellant alleges, prior to the time that the transcript of the proceedings before the director of the department of water resources was transmitted to the district court as provided in § 42–237e. At least there was no certified transcript before the district court as required by I.C. § 42–237e, and there is no record before this Court showing that an appeal from the director's decision was ever perfected.

Since compliance with the procedure for perfecting an appeal is a jurisdictional requirement, *Blinzler v. Andrews, supra,* and the issue of the district court's jurisdiction to hear the appeal may be raised for the first time in this Court, *In re Wellard, supra,* if the notice of appeal required by I.C. § 42–237e was not served upon the director within sixty days of notice of the decision of the director, then the district court did not have jurisdiction to consider the appeal. *In re Wellard, supra.* Therefore, the cause is remanded to the district court to determine whether or not the appeal was properly perfected under I.C. § 42–237e.

■ *Authority of the district court to restrain the director.* The appeal filed with the district court was denominated Notice of Appeal and Petition which, in addition to appealing from the director's decision, sought a writ of prohibition against the director. The summary judgment entered by the district court permanently enjoined the director from enforcing the order which he had entered. There is no indication in the record that either the parties or the court considered the effect of I.C. § 8–408[5] upon the juris-

---

4. The Ground Water Act in I.C. § 42–237e provides in part that:
"Any person dissatisfied with any decision . . . of the director of the department of water resources . . . may within sixty (60) days notice thereof take an appeal therefrom to the District Court for any county in which the ground water concerned therein may be situated. *Appeal shall be taken by serving a notice of appeal upon the director of the department of water resources,* together with a statement describing the decision, determination, order or action appealed from and setting forth the reasons why the same was erroneous. . . ." (Emphasis supplied).
That section further provides that:
"[T]he director of the department of water resources shall, upon receipt of service of notice of appeal, transmit to the District Court a certified transcript of the proceedings and the evidence received at such hearing and the evidence taken at such hearing may be considered by the District Court.

The District Court shall try the same anew at the hearing on the appeal. . . ."

5. Although former I.C. § 8–408 was repealed by I.S.L.1975, ch. 242, sec. 1, effective March 31, 1975, and therefore upon remand this issue will be moot, at the time that the district court entered its summary judgment order, I.C. § 8–408 provided as follows:
"8–408. *Restraint of state officers.*—Where a duty is imposed by statute upon a state officer or officers, an injunction to restrain him or them, or a person employed by him or them, from the performance of that duty, or to prevent the execution of the statute, shall not be granted, except by the district court, sitting in the county in which the officer or officers are located, or the duty is required to be performed; and upon notice of the application therefor to the officer or officers, or other person to be restrained."
*See Hutchins v. Trombley,* 95 Idaho 360, 509 P.2d 579 (1973).

diction of the district court of Cassia County to make such an order.

## PROCEEDINGS ON REMAND

 As indicated above, this cause must be remanded to the district court for further proceedings. The district court must first determine whether it has jurisdiction to hear the appeal from the director by ascertaining whether the appeal from the director's decision was properly perfected as provided in I.C. § 42–237e. If the district court determines that it has jurisdiction to hear the appeal, it shall order the director of the Department of Water Resources to certify the transcript of the proceedings before the director to the district court and shall "try the same anew." I.C.

§ 42–237e; *Hart v. Stewart,* 95 Idaho 781, 519 P.2d 1171 (1974). The director's findings "are vested with a presumption of correctness." *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, at 584, 513 P.2d at 636.

We note that under the terms of the district court's 1971 decree, the appropriators entitled to withdraw water from the aquifer were required to place meters upon their pumps to record the amount of water which they have withdrawn. Thus, upon remand, the district court should be able to accurately determine the correctness of the director's finding that, on the average, the senior appropriators have annually withdrawn less than the 5500 acre feet by which the aquifer is presumably being recharged.[6] This evidence should sharply

---

I.C. § 7–401 *et seq.,* set forth the authority and conditions under which a district court may issue a writ of prohibition. I.C. § 7–402 provides that any district court may issue the writ. However, even though Cassia County was a proper venue to consider a writ of prohibition, that does not necessarily mean that the district court has authority under I.C. § 7–401 to issue such a writ on the record which is before this Court. Such a writ may only be issued if the director's order was "without or in excess of [his] jurisdiction." The district court in the original proceedings in the case of *Baker v. Ore-Ida* specifically referred the administration of the parties' water rights to the director.

"Administration of rights under this Decree are referred to the Department of Water Administration, which department may close additional wells if water is not available to fill the rights herein described, or *allow further wells to be pumped to the extent that water is available and such pumping would not exceed the average annual rate of natural recharge.*" Conclusion of Law II, Clk.Tr. Vol. II, p. 423, *Baker v. Ore-Ida Foods, Inc., supra* (emphasis added). Furthermore, paragraph XII of the district court decree in *Baker v. Ore-Ida* provided in part:

"Future administration of this Decree and of rights in the aquifer shall rest with said Department, or its successors. . . ." *Id.,* p. 435.

Thus, under the district court's own decree, the director had authority to administer the rights involved in its order, including the authority to allow pumping from additional wells if water was available and the additional pumping did not result in the aquifer being

"mined." The director's order allowed lower priority licensees to pump from the aquifer based upon his finding that water was available for this pumping without "mining" the aquifer. It was clearly within the director's jurisdiction as defined by the district court decree itself to permit additional junior appropriators to withdraw water from the aquifer based upon a finding that water was available for the junior's use, and that the junior's use of that water would not result in the aquifer being "mined." Furthermore, I.C. § 42–237a(g) empowers the director to "supervise and control the exercise and administration of all rights . . . to the use of ground waters . . . .", and I.C. § 42–220 prohibits the senior appropriators, regardless of the amount of their decreed right, from "the use of more water than can be beneficially applied on the lands for the benefit of which such right may have been confirmed . . . ." Regardless of whether or not the order of the director was correct, he had the jurisdiction to enter the order and therefore, even though venue for a writ of prohibition would properly have been in the district court of Cassia County, the order entered by the director was not in excess of his jurisdiction, and the order of the district court restraining the director, if in fact it was a writ of prohibition, was erroneously entered.

6. In our opinion in *Baker v. Ore-Ida* we did not decide the question of whether the district court should have deferred primary jurisdiction to the state reclamation engineer to make an initial determination of the rights involved because we said that issue was "effectively mooted . . . by relinquishing the entire matter to the IDWA for ad-

**436**

place in focus the primary issue which must be decided, *viz,* assuming that the senior appropriators have been annually pumping less than their decrees permit, do they nevertheless retain the unused portion of their 5500 acre feet for use in subsequent years as "water in the bank,"[7] or is that unused portion of the seniors' decreed rights available for redistribution to the junior appropriators? *See Glavin v. Salmon River Canal Co., Ltd.,* 44 Idaho 583, 258 P.2d 532 (1927). The director was attempting to resolve this issue when he entered his order dated May 9, 1972, which in effect rejected the "water in the bank" theory, although he went further and, on the assumption that primary jurisdiction had been deferred to him, an assumption suggested by our decision in *Baker v. Ore-Ida,* actually reduced the amount of the decreed annual rights of the seniors by the amount of water which he found had never been applied to beneficial use. By granting summary judgment, the district court, in its zeal to protect the integrity of its 1971 decree, never reached this pivotal issue in the case.

Judgment reversed, injunction dissolved, and cause remanded for further proceedings. Costs to appellant.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.

ministration and possible future modification." 95 Idaho at 586, 513 P.2d at 638. Thus, in *Baker v. Ore-Ida* we expressed no opinion upon the question of whether the district court should have found the state reclamation engineer to have primary jurisdiction to determine the parties' water rights.

In this opinion we also express no opinion upon the question, but observe that because this question was not settled in *Baker v. Ore-Ida* our decisions have neither foreclosed the district court from nor required it to defer primary jurisdiction to the director. Thus, if the district court finds that it has jurisdiction to hear this appeal, it may nevertheless defer further factfinding to the director under the primary jurisdiction doctrine, as expressed in *Grever v. Idaho Telephone Company,* 94 Idaho 900, 499 P.2d 1256 (1972), in order to take advantage of the director's access to the pumping records, his familiarity with them, and his expertise in interpreting them, and also to further the goal of uniformity of method of determination of underground water rights in all judicial and administrative hearings.

7. This "water in the bank," even though never pumped, might benefit the senior appropriators by raising the water table in the aquifer which, prior to the district court's decree, had been dropping at about 20 feet per year, and thus reduce pumping costs to the senior appropriators.