982 P.2d 954

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Joseph Patrick McCARTHY, Defendant–Respondent.**

No. 24482.

Court of Appeals of Idaho.

June 21, 1999.

Rehearing Denied July 27, 1999.

5. Moreover, it should be noted that Magic Valley's claim against Continental sounds in tort, not in contract.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Arkoosh Law Offices, Gooding, for respondent. Eric J. Wildman argued.

LANSING, Judge.

After being charged with driving under the influence of alcohol, Joseph P. McCarthy sought suppression of incriminating evidence that was revealed in the course of a traffic stop. McCarthy claimed that the basis for the stop, that he had been speeding, was

invalid because the arresting officer was mistaken as to the speed limit. The magistrate denied the suppression motion, and McCarthy took an interlocutory appeal to the district court, which reversed the magistrate's decision. The district court held that, in view of the officer's mistake about the speed limit, there was no reasonable suspicion justifying the traffic stop. The State now appeals from the district court's decision.

## I.

## FACTS AND PROCEDURAL BACKGROUND

At just before midnight on October 18, 1996, McCarthy was driving eastbound on Fourth Avenue, approaching the city limits of Gooding. As McCarthy passed through the intersection of Fourth Avenue and Texas Street, Officer Cowen of the Gooding Police Department was driving southward on Texas Street and observed McCarthy's vehicle go through the intersection. Cowen did not employ a radar device but visually estimated McCarthy's speed to be approximately forty-five miles per hour. Believing the speed limit at that point on Fourth Avenue to be twenty-five miles per hour, Cowen stopped McCarthy for speeding.

Officer Cowen was mistaken, however, about the speed limit. He incorrectly believed that the twenty-five mile per hour speed limit sign on Fourth Avenue was posted to the west of the Texas Street intersection when in fact it was located east of the intersection. Therefore, McCarthy had not yet reached the twenty-five mile per hour zone when he traversed the intersection.

After stopping McCarthy, Cowen noticed that McCarthy smelled of alcohol and had bloodshot eyes and flushed cheeks. When asked if he had been drinking, McCarthy stated that he had "a couple" before driving. The officer then conducted field sobriety tests, some of which McCarthy failed. Based upon the test results and his observations,

Cowen arrested McCarthy for driving under the influence of alcohol (DUI), pursuant to I.C. § 18–8004.

McCarthy moved to suppress the evidence gathered as a result of the traffic stop on the ground that there was no reasonable suspicion justifying the stop. Following an evidentiary hearing on the motion, the magistrate found that Officer Cowen was mistaken regarding the location of the speed limit sign and therefore was mistaken as to the effective speed limit. The magistrate concluded, however, that the mistake was reasonable and that the stop therefore was not unlawful. Accordingly, the magistrate denied McCarthy's motion. McCarthy then filed a motion for permission to take an interlocutory appeal, and the magistrate granted the motion. On hearing the appeal, the district court held that the stop was unjustified because McCarthy was not violating the speed limit when observed by Officer Cowen. The district court therefore reversed the magistrate's order on the suppression motion.

The State appeals from the district court's decision and raises two issues. The State asserts, first, that the district court lacked jurisdiction to hear the permissive appeal from the magistrate and, second, that the magistrate correctly determined that the traffic stop was reasonable even though the officer was mistaken about the speed limit.[1]

## II.

## ANALYSIS

### A. Subject Matter Jurisdiction of the District Court

We consider first the State's argument that the district court was without jurisdiction because McCarthy did not perfect his permissive appeal to that court in compliance with applicable rules. The State points out that although McCarthy sought and obtained permission from the magistrate to take an

---

1. The true speed limit on Fourth Avenue at the intersection with Texas Street is not clear from the record. The district court, applying I.C. § 49–654, determined in its appellate opinion that the actual speed limit was fifty-five miles per hour and that McCarthy therefore was not speed-

ing when he passed through the intersection going forty-five miles per hour. On further appeal to this Court, the State does not challenge this part of the district court's decision and does not argue that the stop should be upheld because McCarthy was exceeding the *actual* speed limit.

interlocutory appeal as dictated by Idaho Criminal Rule 54.1(i) and Idaho Appellate Rule 12, he did not also obtain an order from the district court accepting the appeal, as required by the same rules. The State suggests that, absent compliance with these rules, the district court lacked subject matter jurisdiction to review the magistrate's decision on the suppression motion.

 Although the prosecutor did not raise this objection before the district court, we consider the issue because a lack of subject matter jurisdiction may be raised at any time in the course of judicial proceedings and may not be waived by the parties. *Idaho State Ins. Fund v. Turner,* 130 Idaho 190, 191, 938 P.2d 1228, 1229 (1997); *State v. Heyrend,* 129 Idaho 568, 571, 929 P.2d 744, 747 (Ct.App.1996). Issues of subject matter jurisdiction present questions of law over which appellate courts exercise free review. *State v. Barros,* 131 Idaho 379, 380, 957 P.2d 1095, 1096 (1998); *State v. Doyle,* 121 Idaho 911, 913, 828 P.2d 1316, 1318 (1992).

An order denying a suppression motion is an interlocutory order, from which no appeal may be taken as a matter of right. I.C.R. 54.1; I.A.R. 11(c). Generally, an interlocutory order of a magistrate may be appealed only "when processed in the manner provided by Rule 12 of the Idaho Appellate Rules and accepted by the district court." I.C.R. 54.1(i).[2] Appellate Rule 12[3] specifies that a party seeking to pursue a permissive appeal from an interlocutory order must obtain permission from both the court from which the appeal is taken and the appellate court. I.A.R. 12(b), (c). Here, McCarthy complied with Rule 12(b) by obtaining an order from

---

**2.** Idaho Criminal Rule 54.1 provides in relevant part:

> An appeal may be taken to the district judge's division of the district court from any of the following judgments, orders or decisions rendered by a magistrate.
> * * *
> (i) An interlocutory order when processed in the manner provided by Rule 12 of the Idaho Appellate Rules and accepted by the district court.

**3.** Idaho Appellate Rule 12 provides in relevant part:

> (a) Criteria for permission to appeal. Permission may be granted by the Supreme Court to appeal from an interlocutory order or decree of a district court in a civil or criminal action, or from an interlocutory order of an administrative agency, which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation.
>
> (b) Motion to District Court or Administrative Agency—Order. A motion for permission to appeal from an interlocutory order or decree, upon the grounds set forth in subdivision (a) of this rule, shall be filed with the district court or administrative agency within fourteen (14) days from date of entry of the order or decree. The motion shall be filed, served, noticed for hearing and processed in the same manner as any other motion, and hearing of the motion shall be expedited. In criminal actions a motion filed by the defendant shall be served upon the prosecuting attorney of the county. The court or agency shall, within

fourteen (14) days after the hearing, enter an order approving or disapproving the motion.

> (c) Motion to Supreme Court for Permission to Appeal. (1) Motion of a party. Within fourteen (14) days from entry by the district court or administrative agency of an order approving or disapproving a motion for permission to appeal under subdivision (b) of this rule, any party may file a motion with the Supreme Court requesting acceptance of the appeal by permission. A copy of the order of the district court or administrative agency approving or disapproving the permission to appeal shall be attached to the motion. If the district court or administrative agency fails to rule upon the motion for permission to appeal within twenty-one (21) days from the date of the filing of the motion, any party may file a motion with the Supreme Court for permission to appeal without any order of the district court or administrative agency.
> * * *
> (e) Acceptance by Supreme Court. Any appeal by permission of an interlocutory order or decree, or judgment or order of a magistrate, under this rule shall not be valid and effective unless and until the Supreme Court shall enter an order accepting such interlocutory order or decree, or judgment ... as appealable and granting leave to a party to file a notice of appeal within a time certain. Such appeal shall thereafter proceed in the same manner as an appeal as a matter of right, unless otherwise ordered by the Supreme Court in its order of acceptance. The clerk of the Supreme Court shall file with the district court, administrative agency or magistrate a copy of the order of the Supreme Court granting or denying acceptance, and shall mail copies to all parties to the action or proceeding.

the magistrate authorizing the appeal, but he did not file a further motion with the district court for acceptance of the appeal, and therefore did not satisfy subsection (c) of the rule.

According to the State, this is a fatal flaw in the appellate process depriving the district court of jurisdiction and making its appellate decision void. The State relies upon *Briggs v. Golden Valley Land & Cattle Co.*, 97 Idaho 427, 433, 546 P.2d 382, 388 (1976), for the proposition that compliance with all procedures for perfecting an appeal is a jurisdictional requirement.

We conclude that the State is incorrect in its analysis. The consequence of noncompliance with appellate rules is specified by I.A.R. 21, which states:

> [T]he failure to physically file a notice of appeal or notice of cross-appeal with the clerk of the district court ... within the time limits prescribed by the these rules, shall be jurisdictional and shall cause automatic dismissal of such appeal or petition, upon the motion of any party, or upon the initiative of the Supreme Court. *Failure of a party to timely take any other step in the appellate process shall not be deemed jurisdictional,* but may be grounds only for such action or sanction as the Supreme Court deems appropriate, which may include dismissal of the appeal.

(Emphasis added.) A motion for an appellate court's acceptance of an interlocutory appeal is not a notice of appeal, but qualifies as "any other step" in the appellate process, which I.A.R. 21 provides is not jurisdictional.

The *Briggs* decision, upon which the State relies, preceded adoption of I.A.R. 21 and is superseded by that rule. More pertinent are Idaho Supreme Court decisions issued since adoption of I.A.R. 21. These include *Neal v. Harris,* 100 Idaho 348, 597 P.2d 234 (1979), where an appeal was taken from a decision of the Idaho Department of Water Resources to the district court. The appellant did not timely file with the district court a certified copy of the water permit at issue or a cost bond as required by a statute and a court rule. The district court dismissed the appeal due to the appellant's noncompliance with these procedures. The Supreme Court, applying the terms of I.A.R. 21, reversed the district court's dismissal. The Court noted that apart from the timely filing of a notice of appeal, "[a]ll other steps in the appellate process are not jurisdictional, and failure to timely take these steps is only grounds for imposing sanctions where, because of delay and potential prejudice, the court deems them appropriate." *Id.* at 350, 597 P.2d at 236.

More recently, in *North Pacific Ins. Co. v. Mai,* 130 Idaho 251, 252, 939 P.2d 570, 571 (1997), and *Kindred v. Amalgamated Sugar Co.,* 118 Idaho 147, 149, 795 P.2d 309, 311 (1990), the Supreme Court considered interlocutory appeals taken to that Court without the appellant having obtained permission as required by I.A.R. 12. In each case, the Supreme Court decided to go forward and consider the appeal on the merits. The Supreme Court treated the issue as a discretionary matter in deciding whether to allow the appeals to proceed, and exercised its discretion in favor of resolving the cases on the merits. Plainly, the Supreme Court did not consider the violation of Rule 12 to be jurisdictional.

The State argues that *North Pacific* and *Kindred* are inapposite because in those cases the procedural defect was in the appeal to the Supreme Court, rather than in an appeal to an intermediate court. According to the State, the Supreme Court in those cases was able to disregard or circumvent Rule 12 by simply exercising its plenary jurisdiction under the Idaho Constitution, a type of jurisdiction that was not possessed by the district court here. We disagree. Nothing in the *North Pacific* or the *Kindred* opinions suggests that the Idaho Supreme Court considered itself to be exercising its plenary jurisdiction. To the contrary, in each case the Court stated that it would "consider and treat this appeal as an appeal by permission under I.A.R. 12." *North Pacific,* 130 Idaho at 253, 939 P.2d at 572; *Kindred,* 118 Idaho at 149, 795 P.2d at 311.

Accordingly, we conclude that the absence of a motion for acceptance of the appeal did not deprive the district court of jurisdiction in this case. Therefore, the State's failure to raise this procedural objection in the district

court waived the issue. *See State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *Sanchez v. Arave,* 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991); *State v. Campbell,* 131 Idaho 568, 569, 961 P.2d 659, 660 (Ct. App.1998).

## B. Reasonableness of Traffic Stop of McCarthy

■ We thus reach the substantive issue on this appeal: whether the magistrate was correct in determining that Officer Cowen reasonably suspected that McCarthy had violated a traffic law when Cowen stopped McCarthy's vehicle. The facts as to what occurred are undisputed and the only issue is whether, in light of those facts, the officer's suspicion of a traffic violation was reasonable. This is a question of law subject to our independent determination. *State v. Waldie,* 126 Idaho 864, 865, 893 P.2d 811, 812 (Ct. App.1995); *State v. Naccarato,* 126 Idaho 10, 12, 878 P.2d 184, 186 (Ct.App.1994).

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A traffic stop constitutes a seizure governed by this constitutional restraint. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Emory,* 119 Idaho 661, 663, 809 P.2d 522, 524 (Ct.App.1991). Traffic stops do not offend the Fourth Amendment, however, if they are based upon reasonable, articulable suspicion that the vehicle is being driven contrary to traffic laws or that the vehicle or an occupant has been or is about to be involved in criminal activity. *Prouse, supra; In re Deen,* 131 Idaho 435, 958 P.2d 592 (1998); *Emory, supra; Waldie,* 126 Idaho at 866–67, 893 P.2d at 813–14; *State v. Dice,* 126 Idaho 595, 599, 887 P.2d 1102, 1106 (Ct. App.1994). Reasonable suspicion requires less than probable cause but more than speculation or instinct on the part of the officer. *Deen,* 131 Idaho at 436, 958 P.2d at 593; *Emory,* 119 Idaho at 664, 809 P.2d at 525. To determine whether reasonable suspicion existed at the time of a stop, a court must look at the totality of the circumstances existing at the time of the stop. *Id.; State v. Gallegos,* 120 Idaho 894, 897, 821 P.2d 949, 952 (1991); *Dice, supra.*

■ In Fourth Amendment applications, the reasonableness of police conduct is judged against an objective standard. *State v. Weaver,* 127 Idaho 288, 291, 900 P.2d 196, 199 (1995); *State v. Foster,* 127 Idaho 723, 727, 905 P.2d 1032, 1036 (Ct.App.1995). Although this standard allows room for some mistakes on the part of police officers, *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1891 (1949), constitutional standards require that "the mistakes must be those of reasonable men." *Id.* Subjective good faith on the part of the officer is not enough. *Foster, supra.* As the United States Supreme Court has explained, "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only at the discretion of the police." *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968).

In the present case, the State characterizes the officer's mistake about the speed limit as a mistake of fact which the magistrate correctly found to have been reasonable. Because the mistake was reasonable, the State argues, it does not invalidate the traffic stop. We think, however, that the mistake involved here was one of both fact and law. The officer was mistaken about the *fact* of the speed limit sign's location and about the *law* regarding the speed limit applicable on Fourth Avenue at the intersection with Texas Street. These two mistakes are inextricably connected, for the placement of the stop sign determined the applicable speed limit. *See* I.C. § 49–207(4).

■ It is clear that an officer's factual mistake regarding the circumstances that he believes justify a warrantless search or seizure does not *ipso facto* render the search or seizure unlawful. Thus, a search conducted in reliance upon the consent of a third person will be upheld even if it is later established that the consenting party lacked actual authority to consent, so long as the officer reasonably believed that such authority existed. *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *State v. McCaughey,* 127 Idaho 669, 672, 904 P.2d

939, 942 (1995). Similarly, a search incident to an arrest may be lawful even though the arrest was made of the wrong person where the police were reasonable in their mistaken belief as to the identity of the arrestee. *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

However, whether a mistake of *law* will invalidate a search or seizure is an issue that has not previously been addressed by the Idaho appellate courts and appears to have been seldom raised elsewhere. Other jurisdictions are in conflict in their assessments of whether a mistake of law is unreasonable *per se* or is to be tested under the same reasonableness standard that applies to mistakes of fact. At least two jurisdictions have held that when an officer bases a traffic stop on an erroneous interpretation of state law, the stop is illegal. *Byer v. Jackson*, 241 A.D.2d 943, 661 N.Y.S.2d 336 (1997); *State v. Longcore*, 226 Wis.2d 1, 594 N.W.2d 412 (App. 1999). Two other jurisdictions have held that a traffic stop based upon an erroneous interpretation of a different state's laws may be reasonable even if it is later shown that the person stopped was in compliance with the other state's laws. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998); *People v. Glick*, 203 Cal.App.3d 796, 250 Cal.Rptr. 315 (Cal. Ct.App.1988).

■ For disposition of the present appeal, it is not necessary that we resolve whether a police officer's mistake of law is unreasonable *per se*, for we conclude that even under the less stringent standard allowing for reasonable mistakes of law by police, the stop cannot be upheld in this case. We have no reason to doubt that Officer Cowen was acting in good faith and with a genuine belief that the twenty-five mile per hour speed limit sign was located west of the intersection, where McCarthy would have passed it before he was observed by Cowen. However, as noted above, an officer's subjective good faith is insufficient; the mistake must be *objectively* reasonable. The State offered no evidence here to show that the officer's misunderstanding was reasonable. There was no evidence, for example, that the

speed limit sign had recently been moved or that the officer had been misinformed about the sign's location or the applicable speed limit. Nor is this a situation in which the operative law was ambiguous or susceptible to more than one reasonable interpretation. We find nothing in the record from which it might be concluded that the officer's mistake was objectively reasonable.

■ In addition to arguing that Officer Cowen's mistake was reasonable, the State has made an alternative argument presented for the first time on appeal. It asserts that, even if the officer had been acting with correct knowledge of the location of the speed limit sign, the stop was reasonable. According to this argument, McCarthy would have been unable to decelerate from forty-five miles per hour to twenty-five miles per hour in the short distance between the intersection and the stop sign. Therefore, the officer could have reasonably suspected that, even if McCarthy was not speeding in the intersection, he was speeding a few feet past it, and a stop to investigate was justified. Because this is a theory that was not advanced by the prosecutor at the suppression hearing, McCarthy had no opportunity to respond through evidence and the magistrate did not address it in his findings. Consequently, we will not consider it. *See Fodge, supra.*

We therefore hold that the State has not shown that Officer Cowen was in possession of articulable facts giving rise to a *reasonable* suspicion that McCarthy was violating the law when Cowen signaled McCarthy to stop. It follows that the stop violated the Fourth Amendment, and any evidence derived therefrom must be suppressed. We reverse the magistrate's order denying McCarthy's motion to suppress evidence.

Chief Judge PERRY concurs.

Judge SCHWARTZMAN, concurring.

I concur in the opinion of this Court. I would only add that a police officer should be presumed to know the speed limit in his own jurisdiction.[1] A police officer is generally

---

1. A good-faith mistake by John Q. Citizen about the applicable speed limit or the actual speed of

his car will hardly serve as a defense to a speeding ticket.

imputed with knowledge of the law. *See State v. Johnson,* 110 Idaho 516, 521–522, 716 P.2d 1288, 1293–94 (1986). Moreover, if an officer's "good faith" cannot save a defective search warrant issued by a magistrate, that same "good faith" should not be able to save a stop made because the officer made a mistake as to the applicable speed limit. *See State v. Guzman,* 122 Idaho 981, 842 P.2d 660 (1992). Otherwise, the standard to be reviewed will become transmuted into not what the law *is,* but that which the officer, in "good faith," believes it to be.