IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket Nos. 44198 & 44199

| STATE OF IDAHO, | ) | 2017 Opinion No. 49 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: September 29, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| IVAN DRAKE PETTIT, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge. Hon. John C. Judge, Magistrate.

Order of the district court, on intermediate appeal from the magistrate's order granting a motion to suppress, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for appellant. Mark W. Olson argued.

McCormick Law Office; Deborah L. McCormick, Moscow, for respondent. Deborah L. McCormick argued.

_____

HUSKEY, Judge

The State appeals from the district court's appellate decision affirming the magistrate's order granting Ivan Drake Pettit's motion to suppress evidence obtained during a driving under the influence investigation. The State argues: (1) there was not substantial and competent evidence to support the magistrate's finding that Pettit was not required by statute to use a turn signal at the intersection at issue; (2) alternatively, the statute is not unconstitutionally vague as applied to Pettit's maneuver and even if it were, suppression is not the appropriate remedy; and (3) alternatively, the officer's mistake of law is objectively reasonable and constitutes a good faith exception to the warrant requirement. The district court's decision on appeal affirming the magistrate's order granting Pettit's motion to suppress is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2015, an officer stopped a car driven by Pettit for failure to use a right turn signal at an intersection. When approaching the intersection while southbound, motorists choose from three adjacent lanes of travel: the leftmost lane which allows motorists to continue straight through the intersection to State Highway 8 East or to turn left to either Highway 95 North or Highway 8 North and the center and rightmost lanes which guide motorists to curve right and continue on Highway 95 South. The intersection's signage designates these options, with one straight- or left-turn sign and two right-turn-only signs. The signs are accompanied by traffic lights, which for the right-turn-only signs, display either red, yellow, or green arrows, indicating when it is appropriate to proceed through the intersection. Before reaching the intersection, motorists are confronted with at least two signs on the right side of the road that designate Highway 95 South to be on the right and Highway 8 East to be straight ahead. At some point north of the intersection, Highway 95 South is designated as South Jackson Street.

Pettit was traveling on Highway 95 South and approached the intersection in the center lane. He was faced with a green arrow, which indicated to curve right through the intersection. Pettit remained in the center lane and, without using a right turn signal, curved right through the intersection. Because Pettit did not use a right turn signal, the officer stopped Pettit's vehicle. As a result of the stop, the officer obtained evidence which resulted in Pettit being charged with driving under the influence of alcohol (second offense) and driving without privileges.

Pettit pleaded not guilty to both charges and moved to suppress the evidence the officer obtained, arguing that a turn signal was not required at the intersection and, thus, the officer did not have reasonable suspicion to stop Pettit's vehicle. The magistrate granted Pettit's motion to suppress, finding: (1) Idaho Code § 49-808(1) unambiguously did not require Pettit to use a right turn signal and, thus, the officer did not have reasonable suspicion to stop Pettit's vehicle; (2) the officer's mistake of law was not reasonable because the statute is unambiguous; and (3) alternatively, the statute is unconstitutionally vague. The State appealed the magistrate's decision to the district court which affirmed the magistrate's decision on the same grounds, but declined to address whether the statute was unconstitutionally vague. The State timely appeals to this Court.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, the appellate courts do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho

3

641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id*.

### III.

### ANALYSIS

The State asserts the district court erred when it affirmed the magistrate's order granting Pettit's motion to suppress. The State makes several arguments on appeal. First, the State asserts that the officer had reasonable suspicion to stop Pettit because I.C. § 49-808(1) unambiguously required a right turn signal. Second, the State argues that the statute is not unconstitutionally vague as applied to Pettit's maneuver and even if it were, that suppression is not the appropriate remedy. Third, the State contends that if the officer did not have reasonable suspicion to stop Pettit, it was the result of an objectively reasonable mistake of law and, therefore, suppression is not warranted.

**A.** **The Officer Did Not Have Reasonable Suspicion to Stop Pettit's Vehicle Because Pettit Did Not Turn Onto a New Highway**

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Whether the officer had reasonable suspicion that Pettit violated I.C. § 49-808(1) by failing to use a right turn signal at the intersection can be determined by the plain language of the statute. The State argues the statute requires a turn signal in the circumstance of this case and

4

Pettit argues it does not. The text of the statute provides: "No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal." I.C. § 49-808(1). The statute thus requires a signal for three specific maneuvers: (1) when turning a vehicle onto a highway; (2) when moving a vehicle right or left upon a highway, as when changing lanes; and (3) when merging onto or exiting from a highway. At issue in this case is whether Pettit failed to signal before turning his vehicle onto a highway.

In the State's reply brief, the State narrows the parties' interpretive dispute to the term "onto" as contained in I.C. § 49-808(1). The State concedes the plain language of the term contemplates a driver turning onto a new highway, or in other words, onto a highway a driver was not on prior to the turn. The State argues Pettit did just that, leaving Highway 95 South as he entered the Moscow intersection and turning onto a new Highway 95 South as he exited the intersection. The evidence does not support this argument. Highway 95 South is a continuous highway that traverses the intersection at issue. Thus, Pettit did not leave Highway 95 South by turning onto a new highway, but rather continued on Highway 95 South, the same highway he was on prior to his turn. For that reason, the plain language of I.C. § 49-808(1) did not require Pettit to use a turn signal. In contrast, if Pettit had instead turned left at the intersection, onto Highway 8 North, he would have turned onto a new highway, necessitating a turn signal.[1] The magistrate's factual finding that Pettit was not required to signal was thus supported by substantial and competent evidence. Because the district court affirmed the magistrate's decision, we affirm the district court's decision and conclude the officer did not have reasonable suspicion to stop Pettit's vehicle. Because we conclude the plain language of I.C. § 49-808(1) did not require Pettit to use a turn signal at the Moscow intersection, we need not address whether the statute was unconstitutionally vague as applied to Pettit's maneuver.

**B.      The Officer Made an Objectively Reasonable Mistake of Law**

The State is correct that this Court has not squarely addressed whether an officer's mistake of law will necessarily invalidate a traffic stop. *See State v. Horton*, 150 Idaho 300, 303, 246 P.3d 673, 676 (Ct. App. 2010). Consideration of that question has been prevented by the

---

[1]     Although this is a narrow distinction, it is one drawn by the plain language of I.C. § 49-808(1), which we are compelled to apply by the Idaho Supreme Court's holding in *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011).

5

preliminary question of objective reasonableness of an officer's stop. In *State v. McCarthy*, 133 Idaho 119, 982 P.2d 954 (Ct. App. 1999), an officer stopped a driver traveling at an estimated forty-five miles per hour for speeding through what the officer believed to be a twenty-five-mile-per-hour zone. *Id.* at 121, 982 P.2d at 956. However, the officer was mistaken about the speed limit, a mistake the Court characterized as a mistake of fact and law. *Id.* at 124, 982 P.2d at 959. Before reaching the question of whether a mistake of law invalidates a traffic stop, the Court noted it could dispose of the case by considering the preliminary question of whether the mistake of law was objectively reasonable. *Id.* at 125, 982 P.2d at 960. The Court emphasized the objective nature of the reasonableness determination and concluded that the officer's mistake of law was not objectively reasonable because no evidence was presented to support the reasonableness of the mistake and the operative law was not "ambiguous or susceptible to more than one reasonable interpretation." *Id.* Because the officer's mistake was not objectively reasonable, the Court held the officer did not have reasonable suspicion to stop the driver, invalidating the stop. *Id.*

In this case, however, we must go further than the Court in *McCarthy*. Although we conclude that, on its face, I.C. § 49-808(1) plainly did not require Pettit to signal at the Moscow intersection, we also conclude the officer's mistake was objectively reasonable in this circumstance. Idaho Code § 49-808(1) leaves the question of when a "highway" begins and ends subject to reasonable debate. For this reason, both parties argue that different characteristics of the Moscow intersection and surrounding area determine the location where Highway 95 South begins and ends. The State argues the nature of an intersection can signal the beginning and end of a highway. Here, the State points to Highway 95 South's designation as South Jackson Street at some point north of the intersection (although the State asserts naming conventions should not enter into the determination), Pettit's location in a right-turn-only lane, traffic signs indicating Pettit was required to turn right, the approximate ninety degree turn Pettit completed, and the choice of direction the intersection forced Pettit to make. Pettit, however, argues that a highway does not end simply because it passes through an intersection, even one with the characteristics he drove through. Here, Pettit points to Highway 95 South, which is specifically designated as Highway 95 South north of, through, and south of the intersection at issue. In support of this proposition, Pettit points to the two traffic signs before the intersection that indicate a right turn allows a driver to continue on Highway 95 South. Idaho Code § 49-808(1), without explicit

language defining where a highway begins or ends or what impact the characteristics of an intersection have on the definition, prefers neither of these interpretations. As such, the officer's consideration of all these factors and his decision that Pettit was required to signal at the Moscow intersection, was objectively reasonable.

## C. The Mistake of Law Does Not Prevent Suppression

Next, we determine whether an objectively reasonable mistake of law amounts to a good faith exception to Idaho's independent exclusionary rule, so that here, suppression would be inappropriate. The State argues that *Heien v. North Carolina*, 135 S. Ct. 530 (2014) requires the Court to treat the officer's unconstitutional stop as valid for suppression purposes. Indeed, the State points to the United States Supreme Court's observation in *Heien* that for suppression purposes, there should be no distinction between an officer's reasonable mistake of fact and a reasonable mistake of law. *Id.* at 536 ("There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law."). But the State's use of *Heien* looks only to the Fourth Amendment to the United States Constitution and ignores Article 1, § 17 of the Idaho Constitution.

The Idaho Supreme Court's interpretation of Article 1, § 17 departed from the United States Supreme Court's interpretation of the Fourth Amendment in *State v. Guzman*, 122 Idaho 981, 998, 842 P.2d 660, 677 (1992). ("[W]e finally and unequivocally no longer adhere to a policy of sheepishly following in the footsteps of the U.S. Supreme Court in the area of state constitutional analysis.") In *Guzman*, the Idaho Supreme Court determined Article 1, § 17 of the Idaho Constitution would no longer be limited by a good faith exception. *Guzman*, 122 Idaho at 993, 842 P.2d at 672. The Idaho Supreme Court gave several reasons why under Article 1, § 17 a good faith, mistake of law exception should not be allowed:

> 1) provide an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure; 2) deter the police from acting unlawfully in obtaining evidence; 3) encourage thoroughness in the warrant issuing process; 4) avoid having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means; and 5) preserve judicial integrity.

*Guzman*, 122 Idaho at 993, 842 P.2d at 672.

The Idaho Supreme Court affirmed *Guzman*'s validity in *State v. Koivu*, 152 Idaho 511, 272 P.3d 483 (2012), where the Court reiterated the *Guzman* Court's reasoning, refused to reject

7

Idaho's independent exclusionary rule, and reinforced the rule that Idaho courts will continue to construe Article 1, § 17 of the Idaho Constitution "to provide greater protection than is provided by the United States Supreme Court's construction of the Fourth Amendment." *Koivu*, 152 Idaho at 519, 272 P.3d at 491.

The State nonetheless advocates for a good faith, mistake of law exception on the basis that traffic stops are only minimal intrusions on privacy as compared to warrantless searches of a person, home, car, or other property and that not creating a good faith exception is inconsistent with the United States Supreme Court's decision in *Michigan v. DeFillippo*, 443 U.S. 31 (1979) (imposing a good faith exception for an officer's acts performed pursuant to a statute later declared unconstitutionally vague). Neither of these arguments address the Idaho Supreme Court's reasoning in *Guzman* or *Koivu* for not maintaining a good faith exception. First, even a minimal intrusion upon an individual's privacy may amount to an unreasonable government search or seizure. Second, *DeFillippo*'s inconsistency is irrelevant; both *Heien* and *DeFillippo* have no bearing on whether Idaho's independent exclusionary rule is operable, allowing courts to suppress evidence even as to a reasonable mistake of law. Therefore, the Court declines to follow *Heien* or *DeFillippo* and adopt a good faith exception for an officer's objectively reasonable mistake of law. As such, we affirm the district court's ruling suppressing the resulting evidence obtained by the officer's stop of Pettit's vehicle.

## IV.

## CONCLUSION

The officer did not have reasonable suspicion to stop Pettit's vehicle because Pettit did not turn onto a new highway. However, the officer's mistake of law in interpreting I.C. § 49-808(1) was objectively reasonable, although the mistake still merits suppression. We affirm the district court's decision affirming the magistrate's order granting Pettit's motion to suppress.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.