# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38106

STATE OF IDAHO,

       Plaintiff-Appellant,

v.

RANDY PAUL KOIVU,

       Defendant-Respondent.

Boise, February 2012 Term

2012 Opinion No. 32

Filed: March 1, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Bonner County. The Hon. Benjamin Simpson, District Judge.

The order of the district court is affirmed.

Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, argued for the appellant.

Justin M. Curtis, Deputy State Appellate Public Defender, Boise, argued for the respondent.

EISMANN, Justice.

This is an appeal asking that we overrule *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), and hold that the *Leon* good-faith exception to the exclusionary rule applies to violations of Article I, section 17, of the Idaho Constitution. Because the State has not shown any ground for doing so, we decline to overrule that case and affirm the order of the district court suppressing evidence obtained incident to an arrest pursuant to a wrongly issued warrant.

## I.

### Factual Background

Randy Koivu (Defendant) was charged with the crime of possession of methamphetamine in Boundary County. He was found guilty of that crime, and on January 6, 2004, the district court sentenced him to five years in the custody of the Idaho Board of Correction, with three years fixed and two years indeterminate. The court suspended that

sentence and placed Defendant on probation for four years. The terms of probation included that Defendant pay a fine of $500.00, court costs of $88.50, public defender reimbursement of $300.00, and restitution of $100.00. Defendant later violated the terms of his probation, and on November 1, 2005, the court entered an order revoking his probation and committing him to the custody of the Idaho Board of Correction. Defendant was released from prison on July 2, 2009.

On October 1, 2009, a deputy court clerk in Boundary County filed an affidavit in the Boundary County case stating that Defendant had failed to pay a fine and court costs in the sum of $1,028.50. On December 1, 2009, the same deputy clerk filed another affidavit stating that Defendant had failed to comply with a court order requiring him to pay a fine and costs totaling $588.50 by July 6, 2006. On December 8, 2009, the district court issued a warrant of attachment in the Boundary County case to have Defendant seized and brought before the court to show cause why he should not be punished for contempt for his "failure to comply with that certain order of the Court, a copy of which is attached hereto." No copy of any order was attached to the warrant of attachment, but bail was set in the amount of $588.50, and the warrant further stated that the contempt would be purged and the defendant released upon Defendant posting cash in the amount of $588.50. Neither any law enforcement officer nor the prosecuting attorney had any involvement in generating the affidavits or issuing the warrant of attachment.

On March 5, 2010, two sheriff deputies in neighboring Bonner County lawfully stopped a car for speeding. Defendant was the driver of the car. In running a background check of Defendant, the officers were informed that there was a warrant for his arrest out of Boundary County. Reasonably relying upon the validity of the warrant, the deputies arrested Defendant and transported him to the Bonner County jail. Defendant was arrested only because of the warrant; he could not have been arrested for speeding. While searching Defendant at the jail, a baggie of methamphetamine was discovered near his feet.

On March 5, 2010, Defendant was charged in Bonner County with possession of methamphetamine. Defendant waived his right to a preliminary hearing, and on March 17, 2010, the prosecuting attorney filed an information charging Defendant with that crime. The prosecutor also alleged in the information that Defendant was a persistent violator, having had two prior felony convictions.

On April 8, 2010, the prosecuting attorney in Boundary County moved to dismiss the warrant of attachment pursuant to which Defendant had been arrested. On May 4, 2010, the

district court entered an order dismissing it on the ground that "the Court lacked jurisdiction to issue the warrant on December 8, 2009." The lack of jurisdiction was apparently based upon the fact that the district court had not sentenced Defendant to a fine of $500.00 and court costs of $88.50, but had only ordered him to pay such sums as a condition of probation. Upon the revocation of his probation, Defendant was no longer required to pay them. As a result, the district court in the Bonner County case issued an order suppressing the methamphetamine. The State then timely appealed.

## II.

### Do We Have Jurisdiction to Hear This Appeal?

"[S]ubject matter jurisdiction is an issue that this Court may raise *sua sponte* at any time." *Johnson v. Blaine County*, 146 Idaho 916, 924, 204 P.3d 1127, 1135 (2009). Pursuant to Idaho Appellate Rule 11(c)(7), an appeal may be taken as a matter of right from "[a]n order granting a motion to suppress evidence." In this case, Defendant never formally made a motion to suppress any evidence.

The court minutes in the Bonner County case reflect that at Defendant's arraignment his counsel stated she would file a motion to suppress if the district court in the Boundary County case granted the prosecutor's motion to dismiss the warrant of attachment. After the court did so, defense counsel in the Bonner County case filed a brief in support of a motion to suppress in which she argued that under *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), "[t]he *Leon* 'good faith exception' to the exclusionary rule is not applicable to the Idaho Constitution." The Bonner County deputy prosecutor responded by filing a brief in response "to Defendant's Motion to Suppress" in which he argued that *Guzman* should be overruled. The deputy prosecutor also filed a stipulation of facts signed by both parties, which recited that it was "for the purposes of the Defendants' Motions to Suppress." The parties then filed a written waiver of oral argument "on Defendant's Motion to Suppress." On September 1, 2010, the district court entered its decision addressing the State's criticisms of *Guzman* and concluding that "Defendant's Motion to Suppress is hereby GRANTED." However, the Defendant had not ever filed a motion to suppress. In addition, Defendant's brief did not identify the evidence he wanted suppressed; the State's response simply stated that "the defendant has moved to suppress this matter," without identifying what "this matter" was; and the court granted the Defendant's

3

motion without identifying what evidence it had ordered suppressed. From the facts set forth in the stipulation, it is apparent that the evidence at issue is the methamphetamine found in connection with Defendant's arrest and processing at the jail. That is the only evidence mentioned. Since the parties and the court proceeded as if a motion to suppress had been made, albeit maybe implicitly, and the court granted that motion, we hold that the State had the right to appeal pursuant to Idaho Appellate Rule 11(c)(7).

## III.

### Has the State Shown that *State v. Guzman* Should Be Overruled?

Article I, section 17, of the Idaho Constitution provides, "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized." The Idaho Constitution does not specify the remedy for a violation of this provision, nor does the Fourth Amendment to the Constitution of the United States.[1]

In *Weeks v. United States*, 232 U.S. 383 (1914), the United States Supreme Court held for the first time that evidence wrongfully seized by the federal government in violation of a criminal defendant's Fourth Amendment rights could not be used as evidence in the ensuing criminal prosecution. The Court stated that if evidence seized in violation of a defendant's Fourth Amendment rights could be used against him in a criminal prosecution, the protection of the Fourth Amendment would be of no value and it might as well be stricken from the Constitution.

> If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those

---

[1] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

great principles established be years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.

*Id*. at 393.  However, the Court held that the Fourth Amendment did not apply to searches and seizures by city police because "[i]ts limitations reach the Federal government and its agencies." *Id*. at 398.

Three and one-half decades later, the Court decided that the Fourth Amendment should apply to the States, and it used the Due Process Clause of the Fourteenth Amendment as the vehicle for doing so.  *Wolf v. People of the State of Colorado*, 338 U.S. 25, 27-28 (1949). However, the *Wolf* Court left to the individual States the right to decide whether exclusion of evidence or some other remedy should apply to Fourth Amendment violations.  *Id.* at 31.  Thus, the Court held "that in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure."  *Id.* at 33.  Under *Wolf*, the Fourth Amendment did not require any particular remedy for its violation.  The Court stated that the exclusionary rule announced in *Weeks* "was not derived from the explicit requirements of the Fourth Amendment . . . .  The decision was a matter of judicial implication."  *Id*. at 28.

Twelve years later, the Court decided that the exclusionary rule should apply to the States.  In *Mapp v. Ohio*, 367 U.S. 643 (1961), the Court held that:  (a) "extending the substantive protections of due process to all constitutionally unreasonable searches—state and federal—[] was logically and constitutionally necessary," *id*. at 655-56; (b) "[t]o hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment," *id*. at 656; (c) and "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments," *id*. at 657. The Court also stated that reasons for extending the exclusionary rule to the states, included:  (a) "the imperative of judicial integrity," *id*. at 659; (b) "[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence," *id*.; and (c) "it [cannot] lightly be assumed that, as a practical matter, adoption of the exclusionary rule fetters law enforcement," *id*.  The *Mapp* Court held that the exclusionary rule was required by the Fourth Amendment.  It stated, " 'The striking outcome of the *Weeks* case and those which followed it was the sweeping declaration that the Fourth Amendment, although not referring to or limiting the use of evidence in court, really forbade its introduction if obtained by government officers through a violation of the amendment.' "  *Id*. at 649 (quoting *Olmstead v.*

5

*United States*, 277 U.S. 438, 462 (1928)).  Thus, in *Mapp* the Court reversed direction and held that the exclusionary rule was a personal constitutional right.

The Court's view of the exclusionary rule later changed again.  In *Stone v. Powell*, 428 U.S. 465 (1976), the Court held that the exclusionary rule "is not a personal constitutional right," nor is it "calculated to redress the injury to the privacy of the victim of the search or seizure."  *Id.* at 486.  Rather, "[t]he primary justification for the exclusionary rule . . . is the deterrence of police conduct that violates Fourth Amendment rights."  *Id.*

In *United States v. Leon*, 468 U.S. 897 (1984), the Court adopted what became known as the *Leon* "good-faith" exception to the exclusionary rule under the Fourth Amendment.  In *Leon*, the police had seized evidence acting in reasonable reliance on a search warrant, but the warrant was later determined to have been issued without probable cause.[2]  The Court held that the exclusionary rule would not apply to evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.  *Id.* at 922.  The Court also held that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  *Id.* at 916.

The Court has since expanded the good-faith exception to include a search conducted in reasonable reliance upon a subsequently invalidated statute because legislators, like judges, are not the focus of the rule, *Illinois v. Krull*, 480 U.S. 340 (1987); an arrest in reasonable reliance upon information that the arrestee had an outstanding warrant, where the warrant had been quashed but the court clerk had failed to notify the sheriff's office, because applying the exclusionary rule would not deter mistakes made by court employees, *Arizona v. Evans*, 514 U.S. 1 (1995); an arrest in reasonable reliance upon the existence of an outstanding arrest warrant where the officer did not know that the warrant had been recalled due to the negligent failure of a sheriff's employee to update the computer database, *Herring v. United States*, 555 U.S. 135 (2009); and to a search conducted in objectively reasonable reliance upon binding judicial precedent that was later overruled, *Davis v. United States*, ___ U.S. ___, 131 S.Ct. 2419 (2011).

---

[2] The court of appeals had concluded that the warrant failed the two-part test required by *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969).  After the court of appeals had issued its decision, the Supreme Court abandoned the *Aguilar-Spinelli* test in *Illinois v. Gates*, 462 U.S. 213 (1983).

The Idaho Supreme Court first addressed the admission into evidence of unlawfully obtained evidence in *State v. Anderson*, 31 Idaho 514, 174 P. 124 (1918). The Court held that "[e]vidence otherwise competent and relevant to the issue is not rendered inadmissible by reason of its having been disclosed by an unlawful search or obtained by unlawful seizure." *Id*. at 516, 174 P. at 125.

Four years later in *State v. Myers*, 36 Idaho 396, 211 P. 440 (1922), the Court was presented with the argument that certain papers should have been excluded from evidence because they had been taken from the defendant's home in violation of Article I, section 17, of the Idaho Constitution. The defendant had been arrested in his home at his bondman's request, and there was a dispute as to whether certain papers had been obtained by law enforcement in connection with that arrest or had been unlawfully obtained from the home at some other time. Justice Budge wrote to affirm the conviction, holding that it was irrelevant whether the evidence had been lawfully or unlawfully obtained. He stated that if the papers had been unlawfully acquired, "[e]vidence otherwise competent and relevant to the issue is not rendered inadmissible by reason of its having been disclosed by an unlawful search or obtained by unlawful seizure." *Id*. at 403, 211 P. at 441 (quoting from *State v. Anderson*, 31 Idaho 514, 516, 174 P. 124, 125 (1918)). He also quoted at length from the decision of the California Supreme Court in *People v. Mayen*, 205 P. 435 (1922), which he stated was the correct rule, supported by the weight of authority. *Id*. at 404-06, 211 P. at 442. Alternatively, he wrote that if the papers had been taken at the time of the defendant's arrest as testified by the law enforcement officer who obtained them, whose testimony was not contradicted by any direct testimony, then the seizure did not violate the Constitution. *Id*. at 407, 211 P. at 443.

However, the portion of Justice Budge's opinion stating that unlawfully seized evidence was admissible did not gain a majority. In a concurrence joined by Justices Dunn and Lee, Justice McCarthy wrote, "I do not concur in that part of the opinion which approves the doctrine of *People v. Mayen*, 188 Cal. 237, 205 Pac. 425, and disapproves the doctrine of *Weeks v. United States*, 232 U. S. 382, Ann. Cas. 1915C, 1177, 34 Sup. Ct. 341, 58 L. ed. 652, L. R. A. 1915B 834." *Id*. However, this statement by Justices McCarthy, Dunn, and Lee was dicta because they held that the search and seizure resulting in the State's obtaining of the evidence at issue "were not unreasonable or unlawful under Const. art. 1, sec. 17, but were reasonable and lawful as incidental to a lawful arrest." *Id*. at 413, 211 P. at 445 (McCarthy, J., concurring).

Five years later in *State v Arregui*, 44 Idaho 43, 254 P. 788 (1927), the Idaho Supreme Court again addressed whether evidence obtained in violation of a defendant's constitutional rights under Article I, section 17, of the Idaho Constitution was admissible into evidence. A federal prohibition agent had obtained a search warrant from a federal commissioner. Pursuant to the authority of that warrant, that agent and four other federal prohibition agents along with a county deputy sheriff had entered and searched certain hotel rooms occupied by the defendant. Based upon the evidence they obtained, the defendant was charged and convicted in state court with the unlawful possession of intoxicating liquor. This Court held that the warrant was illegal because the affidavit upon which it was based only alleged conclusions of fact, rather than the facts upon which the conclusions were based. *Id.* at 60-64, 254 P. at 793-95. Because the warrant was illegal, the search pursuant to that warrant violated both the Fourth Amendment and Article I, section 17, and the evidence obtained by the search was not admissible in the defendant's criminal trial.

In its decision, the Court made it clear that the evidence unlawfully obtained should be excluded simply because it was obtained in violation of the defendant's constitutional rights. The Court stated:

> Law and court made rules of expediency must not be placed above the Constitution. If violation of constitutional rights or law is to be condoned, excused, palliated, overlooked, or if a violation cannot be proved except by a violation, is it not possible to weigh the various provisions of our Constitution, and fix them in relative importance, above those of any law? . . . .
>
> A continued disregard of the rights guaranteed under the Fourth and Fifth Amendments, and the principles thereof incorporated in state Constitutions, heads us directly to revolution against their usurpation, if history tells us correctly that violation of the rights sought to be protected thereby was one of the chief moving reasons for the Revolution. If, one by one, the rights guaranteed by the federal Constitution, can and must, for expediency's sake, be violated, abolished, stricken from that immortal document, and from state Constitutions, we will find ourselves governed by expediency, not laws or Constitutions, and the revolution will have come.
>
> I can see no such expediency or necessity for the enforcement of any law as to justify violation of constitutional rights to accomplish it. The shock to the sensibilities of the average citizen when his government violates a constitutional right of another is far more evil in its effect than the escape of any criminal through the courts' observance of those rights.

*Id*. at 57-58, 254 P. at 792. The Court also held that it had a duty, to the extent it could, to prevent federal officers from violating the defendant's constitutional rights. It stated: "In the hands of the state courts is placed the power to prevent in part the violation of the rights of a citizen by federal authorities in violation of state and federal constitutions. This is not only in the power of the state court, but its duty." *Id*. at 67, 254 P. at 796. More than two decades before *Mapp*, this Court stated, "The rule is well settled in this state that evidence, procured in violation of defendant's constitutional immunity from search and seizure, is inadmissible and will be excluded if request for its suppression be timely made." *State v. Conner*, 59 Idaho 695, 703, 89 P.2d 197, 201 (1939).

In *State v. Rauch*, 99 Idaho 586, 586 P.2d 671 (1978), this Court stated that *Weeks v. United States* "accurately described the purpose of the exclusionary rule." *Id*. at 592, 586 P.2d at 677. It then quoted from *Weeks* as follows:

> If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.

*Id*. (quoting *Weeks v. United States*, 232 U.S. 383, 393 (1914)).

The *Rauch* Court also quoted from Justice Morgan's dissent in *Anderson* as follows:

> In order that the total disregard, disclosed by this record, of these constitutional safeguards, may be effectual, the court must become a party to it by receiving the results as proof. I decline to do so, and hold that evidence procured by an illegal and unreasonable search, the purpose of which was to discover and seize it, is inadmissible if timely and proper objection be made to its introduction, because it was procured by an invasion of the rights guaranteed to all persons within this state by section 17, art. 1, of the Constitution, and to admit it, against a defendant in a criminal case over such an objection, would be a violation, by the court, of section 13 thereof.
> These sections are guardians of American liberty and justice which come to us from the same source and with like sacrifice as did those, equally but not more greatly prized, whereby we are guaranteed religious liberty, trial by jury, the right to bear arms, to peaceably assemble, free speech, liberty of the press, and many other constitutional safeguards, which, because they have been faithfully upheld by the courts, have accomplished more than has any other agency to make this government one which the peoples of the earth may profitably copy.

*Id*. at 593, 586 P.2d at 678 (quoting *State v. Anderson*, 31 Idaho 514, 527, 174 P. 124, 129 (1918) (Morgan, J., dissenting)). *Rauch* involved the failure to comply with a "knock and announce" statute, not a constitutional violation.

In *State v. Prestwich*, 116 Idaho 959, 783 P.2d 298 (1989), the Court held that it had implicitly approved applying the *Leon* good-faith exception to Article I, section 17, of the Idaho Constitution pursuant to the "review denied rule." It therefore upheld the trial court's refusal to exclude evidence obtained pursuant to an invalid search warrant on the ground that the officers executing the warrant reasonably relied upon its validity.

The Court had adopted the review-denied rule in *Nash v. Overholser*, 114 Idaho 461, 463-64, 757 P.2d 1180, 1182-83 (1988), wherein the Court held that "the failure of this Court to grant a petition for review is that the decision of the Court of Appeals becomes the law of this state with regard to any new principles of law announced in the decision." (Johnson, J., specially concurring). Two years before adopting that rule, the Court had denied review in a case wherein the Court of Appeals had adopted the *Leon* good-faith exception. *State v. Rice*, 109 Idaho 985, 712 P.2d 686 (Ct. App. 1985) (rev. den. January 29, 1986). In *Prestwich*, the Court applied the review-denied rule retroactively to *Rice* and held that "by the denial of review in *Rice*, this Court implicitly approved the applicability of *Leon* under article 1, § 17." 116 Idaho at 960, 783 P.2d at 299. Justice Bistline wrote that his concurrence in *Nash* was a "clerical error in not making certain that my name had been removed from the two opinions authored by Justices Huntley and Johnson." *Id*. at 966, 783 P.2d at 305. However, Justice Bistline had previously concurred in *Hays v. State*, 115 Idaho 315, 316, 766 P.2d 785, 786 (1988), which stated: "Because we denied review in *Brooks*, that case became controlling precedent in this state with regard to any new principles of law announced there. See *Nash v. Overholser*, 114 Idaho 461, 463-64, 757 P.2d 1180, 1182-83 (1988) (Johnson, J. specially concurring, joined by Bistline and Huntley, JJ.)." Nevertheless, in *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), the Court disavowed the review-denied rule, *id.* at 985-87, 842 P.2d at 664-66, and addressed the *Leon* good-faith exception on its merits.

In *Guzman*, the police had obtained evidence pursuant to a search warrant that was later declared invalid because the supporting affidavit alleged only conclusory statements of fact. *Id*. at 984, 842 P.2d at 663. The trial court applied the good-faith exception under *Leon* and refused

to suppress the evidence. *Id*. at 982, 842 P.2d at 661. This Court declined to apply the good-faith exception to the exclusionary rule under Article I, section 17, of the Idaho Constitution. However, a majority did not agree upon the reasons for doing so. Justice Bistline, the author of *Guzman*, set forth his reasons for applying the exclusionary rule in Part V(A) of his opinion and his criticisms of the *Leon* good-faith exception in Parts V(B) and V(C). *Id*. at 992-97, 842 P.2d at 671-76. Justice Johnson concurred in Part V(A), while Justice McDevitt only concurred in the result in Part V. *Id*. at 998, 842 P.2d at 677. Chief Justice Bakes dissented, *id*. at 998-99, 842 P.2d at 677-78, and Justice Boyle did not participate due to his resignation, *id*. at 998, 842 P.2d at 677. Therefore, a majority rejected the good-faith exception, but a majority did not agree upon the reasons for doing so. Later, a unanimous Court stated that the Court had rejected applying the *Leon* good-faith exception to Article I, section 17, and that the *Guzman* decision would be applied retroactively to all cases that had not become final when *Guzman* was issued. *State v. Josephson*, 123 Idaho 790, 795, 852 P.2d 1387, 1392 (1993).

The State now asks us to revisit the *Leon* good-faith exception and overrule *Guzman*. We would also have to overrule *Arregui* and *Rauch* to the extent that they held that there were reasons supporting the exclusionary rule other than deterring unconstitutional searches and seizures that the law enforcement officers did not reasonably believe were lawful. We will ordinarily not overrule one of our prior opinions unless it is shown to have been manifestly wrong, *Scott v. Gossett*, 66 Idaho 329, 335, 158 P.2d 804, 807 (1945), or the holding in the case has proven over time to be unwise or unjust. *State v. Al-Kotrani*, 141 Idaho 66, 69, 106 P.3d 392, 395 (2005).

The State also asserts that "[a] review of the authority relied upon by the *Guzman* plurality does not support its analysis or results." It argues that "those cases clearly show that Idaho's exclusionary rule is co-extensive with the exclusionary rule as adopted and applied by the United States Supreme Court." To support that argument, the State writes: "For example, the Court first relied upon *State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927), the case adopting the exclusionary rule for Idaho. However, the court in *Arregui* specifically relied upon United States Supreme Court authority in adopting the exclusionary rule." According to the State, this shows "that the Idaho Supreme Court did not adopt an exclusionary rule for the Idaho Constitution different from that pronounced by the United States Supreme Court for the Fourth Amendment." In *Arregui*, this Court did quote the three-justice concurrence in *State v. Myers*, which approved

11

of the doctrine of *Weeks v. United States*, 232 U.S. 382 (1914). However, that doctrine did not include the good-faith exception announced seventy years later in *Leon*. There is absolutely nothing in *Arregui* or any other authority relied upon by the *Guzman* Court that commits this Court to construe or apply Article I, section 17, in the same manner as the United States Supreme Court construes or applies the Fourth Amendment. " 'The Fourth Amendment and art. 1 § 17 are designed to protect a person's legitimate expectation of privacy, which "society is prepared to recognize as reasonable".' The similarity of language and purpose, however, does not require this Court to follow United States Supreme Court precedent in interpreting our own constitution." *State v. Donato*, 135 Idaho 469, 471, 20 P.3d 5, 7 (2001) (quoting *State v. Thompson*, 114 Idaho 746, 749, 760 P.2d 1162, 1165 (1988)). "Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions." *Id.* (quoting *State v. Newman*, 108 Idaho 5, 10, 696 P.2d 856, 861 n.6 (1985)).

The exclusionary rule is a judicially created remedy for searches and seizures that violate the Constitution. As shown above, courts have disagreed over the years as to whether there should be any remedy for such constitutional violations and, if so, whether it should focus upon redressing the wrong committed against the victim of the unconstitutional search or seizure or only upon deterring future violations of such constitutional rights by law enforcement officials. The holding in *Guzman* was that evidence obtained from a defendant pursuant to a warrant will not be admissible in the defendant's criminal trial if the warrant was issued without probable cause in violation of the Constitution. That holding is not manifestly wrong. It is identical to the holding in *Arregui* and is consistent with the holdings of other courts, including the United States Surpeme Court. *Aguilar v. Texas*, 378 U.S. 108 (1964).

The State contends that "[t]he second flaw of Guzman is its contention that the *Leon* good-faith exception to the exclusionary rule is inimical to the values of exclusion unrelated to police deterrence." The State then argues why the *Leon* Court was right and the *Guzman* plurality was wrong. It also asserts that application of the exclusionary rule here would not deter police misconduct because the officers involved simply did what they were required to do— execute an arrest warrant.

This Court's rejection of the *Leon* good-faith exception in *Guzman* was supported by an independent exclusionary rule announced eighty-five years ago in *Arregui*. In *Arregui*, there was

12

no claim of law enforcement misconduct. The officers relied upon the validity of a search warrant that was later held to be invalid due to the lack of a showing of probable cause in the affidavit upon which the warrant was issued. Likewise, in *State v. Oropeza*, 97 Idaho 387, 545 P.2d 475 (1976), evidence was suppressed for the same reason. When *Guzman* was decided, "Idaho had clearly developed an exclusionary rule as a constitutionally mandated remedy for illegal searches and seizures in addition to other purposes behind the rule such as recognizing the exclusionary rule as a deterrent for police misconduct." *Donato*, 135 Idaho at 472, 20 P.3d at 8. In some instances, we have construed Article I, section 17, to provide greater protection than is provided by the United States Supreme Court's construction of the Fourth Amendment. "[W]e provided greater protection to Idaho citizens based on the uniqueness of our state, our Constitution, and our long-standing jurisprudence." *Id*. To overrule *Guzman* and hold that the exclusionary rule's sole purpose is to deter police misconduct, we would also have to overrule *Arregui*, which adopted the exclusionary rule in Idaho in a case in which there was no police misconduct. The State has not pointed to anything in the record showing that during the last eighty-five years *Arregui* has proved to be unwise or unjust. We therefore uphold the district court's order holding that the methamphetamine is not admissible into evidence because the Defendant's arrest pursuant to an invalid warrant of attachment violated his rights under Article I, section 17, of the Idaho Constitution.

## IV.
### Conclusion.

We affirm the order of the district court excluding the methamphetamine.


Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**