# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48920

|                          |     |                               |
|--------------------------|-----|-------------------------------|
| **STATE OF IDAHO,**      | )   |                               |
|                          | )   |                               |
| **Plaintiff-Respondent,**| )   | **Boise, September 2022 Term**|
|                          | )   |                               |
| **v.**                   | )   | **Opinion Filed: March 21, 2023** |
|                          | )   |                               |
| **EDUARDO PLATA INIGUEZ,**| )  | **Melanie Gagnepain, Clerk**  |
|                          | )   |                               |
| **Defendant-Appellant.** | )   |                               |
| ———————————————————————— | )   |                               |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Gerald F. Schroeder, District Judge.

The decision of the district court is <u>reversed</u>.

Hammond Law Office, PA, Caldwell, for Appellant. Richard Hammond argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Mark Olson argued.

—————————————————

BRODY, Justice.

This case addresses the exclusionary rule in the context of a warrantless arrest for a misdemeanor completed outside the presence of an officer—where the arrest occurred prior to the release of our decision in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019) (holding that warrantless arrests for completed misdemeanors violate Article I, section 17 of the Idaho Constitution). Officers from the Boise Police Department arrested Eduardo Plata Iniguez ("Plata") outside his home for misdemeanor driving under the influence ("DUI") without a warrant, and without witnessing the commission of the alleged crime. Upon his arrest, Plata was transported to the Ada County Jail ("the Jail"), where evidentiary breath testing was administered. At the Jail, Plata failed to provide an adequate breath sample. Thereafter, officers procured a warrant from an on-call magistrate judge for a search of Plata's blood, performed a blood draw at the Jail, and

1

obtained an evidentiary sample of his blood. The State charged Plata with misdemeanor DUI (second offense), and Plata moved to suppress the blood draw evidence as a product of his unlawful arrest under *Clarke*. The magistrate court denied his motion, and the district court later affirmed in its intermediate appellate capacity.

Plata timely appealed to this Court, arguing the district court erred because there is a causal nexus between his illegal arrest and the State's acquisition of the blood draw evidence. The State responds that there is no causal nexus, and even if there is, this Court should adopt a reasonable "mistake of law" exception to Idaho's exclusionary rule because the illegal arrest of Plata occurred prior to our decision in *Clarke*. For the reasons stated below, Plata made an initial showing of a causal nexus; Idaho's exclusionary rule does not include a reasonable "mistake of law" exception; and the State has not argued another established exception applies (e.g., inevitable discovery or attenuation). Thus, the blood draw evidence must be suppressed as derivative fruit of Plata's illegal arrest, and the decision of the district court is reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On a January evening in 2019, Plata backed his vehicle out of his driveway and into his neighbor's vehicle. Plata stayed at the scene and contacted the neighbor to advise him of the accident. The police were called to the scene, and when they arrived, Plata and the neighbor were peaceably discussing the accident in the street outside Plata's residence. The investigating officer took Plata aside and asked him to describe the accident. At the later suppression hearing, the officer testified that during his conversation with Plata (a native Spanish speaker), he observed signs of intoxication, including the odor of alcohol, an unsteady gait, blood-shot and watery eyes, and mumbled speech. During that conversation, Plata volunteered that he had been driving and admitted to drinking one or two beers in his house.

After observing Plata, the officer informed Plata that he intended to conduct a DUI investigation. Before the officer conducted three field sobriety tests, he explained and demonstrated each test, and attempted to verify that Plata understood the directions. Later, the magistrate court found that Plata understood the directions for each test. The officer conducted the three tests ("Gaze Nystagmus," "Walk and Turn," and "One Leg Stand"), and Plata failed each one. The officer then handcuffed Plata and announced: "I'm placing you under arrest for DUI." Afterwards, the officer instructed Plata that he wanted to employ a breath test for alcohol and

offered to test Plata either at their current location (i.e., the scene of the accident), or at the Jail. Plata selected the Jail.

After Plata arrived at the Jail, he indicated that he did not want to take the breath test. Another police officer played a video (in English) explaining Idaho's implied consent law for evidentiary testing, and that Plata's driver's license could be administratively suspended if he refused testing. The video was offered to Plata in Spanish after the English version played, but Plata said "no." Plata then indicated that he would take the breath test, but after three attempts, the administering officers determined Plata had refused the test by failing to provide an adequate sample. Around this time, Plata also refused a blood draw. The administering officers then advised Plata that they were going to seek a search warrant to perform a blood draw.

The investigating officer then phoned an on-call magistrate judge, and after being sworn, advised the magistrate judge of the basis for the search warrant. As reflected in the officer's affidavit in support of probable cause for the warrant, the basis for the warrant given to the magistrate judge included information gathered both *before* Plata's arrest (vehicle accident, objective signs of impairment, admission to driving, admission to drinking at home, and failure of field sobriety testing)—and *after* Plata's arrest (failure to supply an evidentiary breath sample during testing and refusal to provide a blood sample). The magistrate judge granted the warrant to search Plata's blood, and a blood sample was taken from Plata at the Jail. The sample showed Plata's blood-alcohol concentration was 0.131.

From this, the State charged Plata with misdemeanor DUI (second offense). Plata filed a motion to suppress all evidence obtained by the involved police officers, on numerous grounds. Shortly after the State filed its response to Plata's motion, this Court issued its decision in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). In *Clarke*, we held that Article I, section 17 of the Idaho Constitution prohibited warrantless arrests for misdemeanors completed outside of an officer's presence, *id.* at 399, 446 P.3d at 457, thereby rendering the statute permitting Plata's warrantless arrest for a completed misdemeanor DUI, I.C. § 49-1405(1), unconstitutional. Plata filed supplemental briefing in light of *Clarke* and argued that all evidence derived from his illegal arrest under *Clarke*, e.g., the blood draw evidence, must be suppressed.

The magistrate court conducted an evidentiary hearing on Plata's motion, and ordered the parties to submit written closing arguments. The magistrate court issued a written decision denying Plata's motion, and ruled, among other things, that suppression of the blood draw evidence was

not warranted because there was no causal nexus between the illegal arrest of Plata and the search warrant of Plata's blood that was secured at the Jail, based on information pre-arrest sufficient to provide probable cause for the search. Plata timely filed a motion for reconsideration, which the magistrate court denied. Plata then entered a conditional guilty plea and appealed the magistrate court's judgment to the district court.

On intermediate appeal, Plata argued, among other things, that the blood draw evidence was a product of his illegal arrest, i.e., there was a causal nexus between his illegal arrest that centered on his transport to the Jail, obtaining the search warrant at the Jail, and the drawing of his blood at the Jail. Plata also argued that the search warrant was not sufficiently attenuated from his illegal arrest to thereby purge the blood draw evidence of any taint flowing from his illegal arrest. In response, the State argued, among other things, that no causal nexus existed between Plata's illegal arrest and the blood draw evidence. The State also specifically rejected any suggestion by Plata that the State had advanced an "attenuation analysis" before the magistrate court. The State acknowledged that it had used the word "attenuated" in the heading of its brief below, but contended that it never presented a "formal attenuation analysis" before the magistrate court. Thus, the State maintained that any attenuation issue was "raised for the first time on appeal" by Plata— and should not be considered by the district court.

In its intermediate appellate capacity, the district court affirmed, among other things, the magistrate court's decision denying Plata's motion to suppress the blood draw evidence. The district court concluded that Plata had been illegally arrested based on *Clarke*, but that suppression of the blood draw evidence was not warranted because Plata had failed to carry his initial burden of showing a causal nexus between his illegal arrest and the State's acquisition of the blood draw evidence because a valid search warrant was obtained at the Jail, based on pre-arrest information sufficient to provide probable cause (regardless of the post-arrest information). The district court further noted that at the time Plata was arrested, he was not on his own property, but was in the street near his residence. Because of this, according to the district court, an arrest warrant was not first needed before the investigating officer could lawfully transport Plata to the Jail to execute the search warrant authorizing a search of Plata's blood.

Plata timely appealed the decision of the district court affirming the magistrate's denial of his motion to suppress the blood draw evidence to this Court.

4

## II.  STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its capacity as an intermediate appellate court, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Losser v. Bradstreet,* 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (quoting *Nicholls v. Blaser,* 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)). Thus, rather than review the decision of the magistrate court, we are "procedurally bound to affirm or reverse the decisions of the district court." *State v. Korn,* 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

"The standard of review of a suppression motion is bifurcated. This Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Baker*, 141 Idaho 163, 165, 107 P.3d 1214, 1216 (2004).

## III.  ANALYSIS

On appeal Plata argues that a causal nexus exists between his illegal arrest, his transport to the Jail, and the blood draw evidence obtained from him at the Jail. Plata argues that because he made his required initial showing of a causal nexus, and the State did not argue any established exceptions to the exclusionary rule (e.g., independent basis, inevitable discovery, or attenuation), suppression of the blood draw evidence is required. The State responds that Plata failed to demonstrate a causal nexus between the illegal arrest and the blood draw evidence, and even if there is a nexus, this Court should adopt a new exception to Idaho's exclusionary rule when a governmental actor, such as the investigating officer, makes a reasonable mistake of law.

For the reasons discussed below, Plata has carried his prima facie burden to show a causal nexus between his illegal arrest and the blood draw evidence obtained at the Jail. The State has not advanced any established exceptions to the exclusionary rule, and we decline the State's invitation to adopt a new reasonable mistake of law exception. Thus, because the State has not shown an exception to exclusion applies, the blood draw evidence must be suppressed.

**A. Plata has made a prima facie showing of the causal nexus between his illegal arrest and the blood draw evidence acquired by the State at the Jail.**

Article I, section 17 of the Idaho Constitution provides in pertinent part that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized." Under this section, warrantless arrests for misdemeanors completed outside the presence of an officer are unconstitutional. *State v. Clarke*, 165 Idaho 393, 400, 446 P.3d 451, 457 (2019). In this case, there is no dispute that Plata's arrest was in violation of Article I, section 17 because he was arrested without a warrant, for a (second offense) misdemeanor DUI completed outside the presence of the investigating officer. Thus, the only question is whether the blood draw evidence obtained after Plata's illegal arrest requires suppression through application of Idaho's exclusionary rule.

Evidence obtained in violation of Article I, section 17, is subject to the "exclusionary rule, which requires unlawfully seized evidence to be excluded from trial." *See State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017); *State v. Guzman*, 122 Idaho 981, 993, 842 P.2d 660, 672 (1992). "The exclusionary rule requires the suppression of both 'primary evidence obtained as a direct result of an illegal search or seizure' and, pertinent here, 'evidence later discovered and found to be *derivative* of an illegality,' the proverbial 'fruit of the poisonous tree.' " *Cohagan*, 162 Idaho at 720, 404 P.3d at 662 (emphasis added) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotations omitted)). "Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.' " *Segura*, 468 U.S. at 815 (emphasis added) (quoting *United States v. Crews*, 445 U.S. 463, 471 (1980)); *see State v. Keene*, 144 Idaho 915, 918, 174 P.3d 885, 888 (Ct. App. 2007).

To determine whether acquired evidence is derivative of an Article I, section 17 violation such that it *could* be deemed " 'fruit of a poisonous tree' "—we consider "whether the evidence was discovered through the exploitation of the illegal actions by police or 'instead by means sufficiently distinguishable to be purged of the primary taint.' " *State v. Vivian*, 171 Idaho 79, __, 518 P.3d 378, 382 (2022) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)). Under this framework, " 'the defendant bears an initial burden of going forward with evidence to show a factual nexus between the illegality and the state's acquisition of the evidence.' " *Vivian*, 171 Idaho at __, 518 P.3d at 382 (quoting *State v. Kapelle*, 158 Idaho 121, 127, 344 P.3d 901, 907 (Ct. App. 2014)). "This requires a prima facie showing that the evidence sought to be suppressed

6

would not have come to light but for the government's unconstitutional conduct." *Vivian*, 171 Idaho at __, 518 P.3d at 382 (internal quotations omitted). To meet this showing, the defendant need not prove a negative, i.e., "that the State could not have discovered the evidence absent" the illegal governmental conduct. *Id.* at __, 518 P.3d at 383. "[B]ut-for" causation—at this initial step—is "causation in the *logical* sense alone[.]" *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (emphasis added) (quotations omitted).

Importantly, a causal "nexus" between illegal conduct and "derivative" evidence does not exist simply because the challenged evidence was acquired *after* the illegal conduct. Otherwise, our "nexus" standard would be reduced to nothing other than the *post hoc ergo propter hoc* ("after this, therefore resulting from it") logical fallacy, i.e., "[t]he logical fallacy of assuming that a causal relationship exists when acts or events are merely sequential." *See Post Hoc Ergo Propter Hoc*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see, e.g.*, *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (using this principle to explain why the plaintiff's evidence does not establish a causal "nexus" between an adverse employment decision, and his negative comments about a supervisor six or seven months earlier); *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 n.8 (10th Cir. 1987) (explaining that a causal conclusion based on such reasoning is "not a reasonable inference but is mere speculation and conjecture"). Roosters may crow before sunrise, but the sun does not rise because the rooster crows. Accordingly, more than temporal sequence is required to show a prima facie "nexus": The defendant must show that the challenged evidence is, "on the events that did take place . . . *a product or result of* the unlawful police conduct." *Vivian*, 171 Idaho at __, 518 P.3d at 382–83 (emphasis added) (internal quotations omitted).

Here, Plata made a prima facie causal showing that his illegal arrest, on the events that did take place, produced or resulted in the State's acquisition of the blood draw evidence. The chain of causation is relatively straightforward: Plata's illegal arrest resulted in his transport to the Jail. Arrival at the Jail resulted in Plata submitting to breath testing. Breath testing resulted in Plata failing to provide an adequate breath sample. Plata's failure to provide an adequate breath sample resulted in the investigating officer seeking a search warrant for Plata's blood. The search warrant resulted in a blood draw, and obtaining blood draw evidence—which on the events that did take place—would not have been possible but for Plata's transport to, and continuing detention at, the Jail. Accordingly, the prima facie causal nexus between Plata's illegal arrest and the State's

acquisition of the blood draw evidence is Plata's detention at the Jail—which, on the events that did take place, allowed for the search of Plata's blood *at all*.

From this initial showing by Plata, the burden then shifts to the State to demonstrate whether an exception to the exclusionary rule applies to prevent suppression. *See Vivian*, 171 Idaho at __, 518 P.3d at 383. Even with a prima facie showing by a defendant of a causal nexus, the State may ultimately defeat this causal showing, through an exception, by demonstrating that the challenged evidence was—or would have inevitably been—obtained " 'by means sufficiently distinguishable to be purged' " of any taint flowing from the illegal governmental conduct. *See id.* at, __, 518 P.3d at 382 (quoting *Wong Sun*, 371 U.S. at 487–88); *Hudson*, 547 U.S. at 592 ("[B]ut-for causality is only a necessary, not a sufficient, condition for suppression."). There are three established exceptions to Idaho's exclusionary rule: "independent origin, inevitable discovery, and attenuated basis." *Vivian*, 171 Idaho at __, 518 P.3d at 383.

Here, the State has not advanced the independent origin, inevitable discovery, or attenuated basis exceptions to argue why or how the blood draw evidence was "purged" of the taint derivatively flowing from Plata's illegal arrest. Instead, the State defended the district court's analysis that Plata "failed to meet his initial burden to demonstrate a nexus between any unconstitutional police conduct and the state's acquisitions of the blood sample and blood test results." In support of this "no nexus" argument, the State, like the district court, pointed to the pre-arrest facts (Plata admitted to driving, collided with another vehicle, admitted to drinking alcohol in his home, and failed field sobriety testing) as "sufficient" to uphold the search warrant for Plata's blood—despite the investigating officer's application for the search warrant *also* including post-arrest facts (Plata's failed attempts at providing a breath sample).

Arguably, the State's position could be understood as an attenuation or inevitable discovery argument in substance—despite the State affixing a "no nexus" label. Nevertheless, we cannot treat it as such for two reasons. First, the State has not provided a cogent argument supported by authority to carry its burden on the applicability of either exception, *see id.* at __, 518 P.3d at 383. Second, and more importantly, the State has not preserved either exception so that we could consider their application to the facts of this case. "[W]e will not consider issues not raised in the trial court on appeal." *State v. Wilson*, 169 Idaho 342, 346, 495 P.3d 1030, 1034 (2021). To properly preserve an issue for appeal, "both the issue and the party's position on the issue must be raised before the trial court[.]" *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019).

8

Here, the State never argued inevitable discovery below and although the State used the word "attenuated" in its briefing at one point before the magistrate court—on intermediate appeal, the State explicitly denied that it was "undertak[ing] an attenuation analysis[,]" and even argued that attenuation "should not be considered" by the district court. Thus, to the extent the State's "no nexus" argument could be understood as "inevitable discovery" or "attenuation" arguments— neither exception has been preserved for our consideration on appeal.

Because of this, we also do not reach a pressing question: Whether, after *Clarke*, the police would have *also* had to obtain an arrest warrant to lawfully transport Plata from the street outside his home to the Jail for evidentiary testing to inevitably obtain the blood draw evidence pursuant to the search warrant. *See State v. Downing*, 163 Idaho 26, 31, 407 P.3d 1285, 1290 (2017) ("[T]he inevitable discovery doctrine asks courts to engage in a hypothetical finding into the lawful actions law enforcement *would have inevitably taken* in the absence of the unlawful avenue that led to the evidence." (emphasis in original)). From this, we now turn to the (federal) exception that the State *has* asked us to adopt and apply to deny suppression: the reasonable mistake of law.

**B. There is no reasonable mistake of law exception to Idaho's independent exclusionary rule under Article I, section 17 of the Idaho Constitution.**

At the time the investigating officer arrested Plata for a completed misdemeanor DUI, he did so under the authority of Idaho Code section 49-1405(1), a statute which we later held to be unconstitutional in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). Based on this, the State presents an issue of first impression for this Court: Whether there is a reasonable mistake of law exception to Idaho's independent exclusionary rule as recognized in the federal system. *See Heien v. North Carolina*, 574 U.S. 54 (2014). The State acknowledges that this issue was not raised below but maintains that we can consider it because the lower courts here were bound by *State v. Pettit*, 162 Idaho 849, 406 P.3d 370 (Ct. App. 2017)—a Court of Appeals decision declining to adopt this exception—and the district court recognized *Pettit* in affirming the magistrate court. The State notes that as binding precedent, it could not effectively request that *Pettit* be abrogated or overruled until the State was first before this Court or the Court of Appeals. The State is correct.

In its decision below, the district court recognized that *Pettit* required it to conclude that the investigating officer unconstitutionally arrested Plata—regardless of whether the officer was, prior to *Clarke*, acting reasonably in arresting Plata pursuant to Idaho Code section 49-1405(1). *See Guzman*, 122 Idaho at 986–87, 842 P.2d at 665–66. In *State v. Jeske*, we clarified that if an issue was "argued to, *or decided by*, the district court it can form the basis for review by this

9

Court." 164 Idaho 862, 868, 436 P.3d 683, 689 (2019) (emphasis added). There is a difference between issues "not formally raised below and issues that 'never surfaced' below[,]" until they appear in a decision. *See Kolar v. Cassia Cty. Idaho*, 142 Idaho 346, 354, 127 P.3d 962, 970 (2005).

In this case, the issue of whether a reasonable mistake of law should be added to Idaho's exceptions to the exclusionary rule could not effectively surface below because, as the State points out, *Pettit* already bound the lower courts on that issue. Plata's appeal to this Court, and the surfacing of *Pettit* in the district court's ruling, presents the first opportunity for the State to ask that we adopt this exception. *See State v. Clinton*, 155 Idaho 271, 273 n.1, 311 P.3d 283, 284 n.1 (2013) (explaining that this Court does not directly review or overrule decisions from the Court of Appeals, rather, if there is a conflict, lower courts—including the Court of Appeals—are expected to follow the decisions of this Court). For these reasons, we will consider the State's argument that the federal reasonable mistake of law exception should be added to the exceptions to Idaho's exclusionary rule.

The thrust of the State's position is that, "at least in the circumstances of this case, an officer's reasonable mistake of law and/or reliance upon a subsequently invalidated statute does not compel the suppression of evidence." The State relies on the United States Supreme Court's decision in *Heien v. North Carolina*, 574 U.S. 54 (2014), to reason that because Idaho Code section 49-1405(1) authorized Plata's arrest at the time it occurred (i.e., our decision in *Clarke* had not yet issued), the investigating officer's mistake of law was "reasonable"—and thereby did not offend the prohibition against "unreasonable" seizures in Article I, section 17 of the Idaho Constitution.

The State further argues that adopting a reasonable mistake of law exception can be reconciled with our decision in *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), to reject the "good faith" exception to exclusion articulated in *United States v. Leon*, 468 U.S. 897 (1984). According to the State, the difference is that the reasonable mistake of law exception is concerned with the touchstone of "reasonableness" under the Fourth Amendment *and* Article I, section 17 of Idaho's Constitution—i.e., that an officer's mistake of law, if "reasonable," would not violate a defendant's constitutional right to be free from "unreasonable" searches and seizures. In contrast, the "good faith" exception from *Leon* is concerned with "what, if any, *remedy* should be available to a defendant whose constitutional rights have *already been violated* by the issuance and execution of a search warrant that was unsupported by probable cause." (Emphasis added.)

Nevertheless, even if there is a difference between the rationale for the two exceptions as the State suggests; for purposes of Idaho's independent exclusionary rule, this is a distinction without a difference. The United States Supreme Court's rationale for the Fourth Amendment exclusionary rule has, over time, devolved into existing for only one purpose: "deterrence of police misconduct." *Guzman*, 122 Idaho at 992, 842 P.2d at 671. In contrast, Idaho's independent exclusionary rule under Article I, section 17 of the Idaho Constitution exists to do more than "merely deter police misconduct[.]" *Id*. Our exclusionary rule operates to: (1) "provide an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure;" (2) "deter the police from acting unlawfully in obtaining evidence;" (3) "encourage thoroughness in the warrant issuing process;" (4) "avoid having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means;" and (5) "preserve judicial integrity." *Id*. at 993, 842 P.2d at 672.

Indeed, eleven years ago, we were asked to overrule our decision in *Guzman* and adopt a "good-faith" exception to the warrant requirement, but we declined to do so. *State v. Koivu*, 152 Idaho 511, 513–19, 272 P.3d 483, 485–91 (2012). Instead, we continued to adhere to our view explained in *Guzman*, "announced eighty-five years ago in [*State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927)]" (now ninety-six years ago), that the purpose of Idaho's exclusionary rule, unlike the federal rule under the Fourth Amendment, is not merely "to deter police misconduct[.]" *Koivu*, 152 Idaho at 519, 272 P.3d at 491. Thus, in the context of the exclusionary rule, Article I, section 17 of the Idaho Constitution affords "greater protection than is provided by the United States Supreme Court's construction of the Fourth Amendment." *Id*.

Here, the State's attempt at drawing a distinction between the rationale underlying the reasonable "mistake of law" exception from *Heien* and the "good faith" exception from *Leon* makes no difference for Idaho's exclusionary rule. The United States Supreme Court's construction of the Fourth Amendment, and its focus on deterrence, is the driving force behind the Court's justification for adopting both exceptions to deny suppression. As explained above, Idaho's exclusionary rule is not limited by whether suppression advances deterrence.

While we appreciate that the investigating officer relied on Idaho Code section 49-1405(1) to arrest Plata without a warrant—a statute which, prior to *Clarke*, enjoyed a "strong presumption of validity," *State v. Doe*, 140 Idaho 271, 273, 92 P.3d 521, 523 (2004)—such reliance does not "undo" or negate the violation of Plata's constitutional rights under Article I, section 17.

11

Warrantless arrests for misdemeanors completed outside of an officer's presence have been prohibited by Article I, section 17 since that provision was adopted in 1889. *Clarke*, 165 Idaho at 399, 446 P.3d at 457. Our decision in *Clarke* was simply the first time we had occasion to answer that question. Thus, contrary to the State's reliance on *Heien*, the illegal arrest of Plata—even if done in "reasonable" reliance on an authorizing statute—is not a *constitutionally* "reasonable" seizure. A constitutional violation is not *undone* so long as the mistake of law was reasonable.

To hold otherwise would, however briefly, open a widow to unconstitutional governmental conduct between the time the legislature passes a statute authorizing such conduct—and our first chance to declare that statute unconstitutional, and close the window. Thus, adding a reasonable mistake of law exception to Idaho's exclusionary rule is not only contrary to legislative deterrence, *cf. Illinois v. Krull*, 480 U.S. 340, 366 (1987) (O'Connor, J., dissenting) ("Providing legislatures a grace period during which the police may freely perform unreasonable searches in order to convict those who might have otherwise escaped creates a positive incentive to promulgate unconstitutional laws.")—but contrary to judicial integrity, *State v. LePage*, 102 Idaho 387, 391–92, 630 P.2d 674, 678–79 (1981), and to preventing additional, independent violations of Article I, section 17 by the judiciary where illegally obtained evidence is permitted to be admitted against a defendant, *State v. Rauch*, 99 Idaho 586, 593, 586 P.2d 671, 678 (1978).

Idaho's exclusionary rule does not share the United States Supreme Court's tolerance for the admission of evidence obtained as a result of (1) a search pursuant to a statute later ruled unconstitutional, *Krull*, 480 U.S. at 360; (2) a seizure pursuant to an ordinance that is later ruled unconstitutional, *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); or (3) its movement towards thinking there is "no violation of the Fourth Amendment *in the first place*[,]" *Heien*, 574 U.S. at 66 (emphasis added), if a governmental actor makes a "reasonable" mistake of law. The State has given no reason to think the expansive rationale for Idaho's exclusionary rule, as we explained in *Guzman* and reaffirmed in *Koivu*, can be reconciled with *Heien*'s "mistake of law" exception any more than it can be with the "good faith" exception from *Leon*. For these reasons, we decline the State's invitation to add a reasonable mistake of law exception to Idaho's exclusionary rule.

In sum, Plata has carried his initial burden to prove a causal nexus, based on the events that did take place, between his illegal arrest and the State's acquisition of the blood draw evidence. The State did not argue an established exception to Idaho's exclusionary rule (e.g., inevitable discovery or attenuated basis)—and there is no reasonable "mistake of law" exception to Idaho's

exclusionary rule. Thus, suppression is warranted because the State has not carried its burden to ultimately prove that the blood draw evidence was "purged" of any taint flowing derivatively from Plata's illegal arrest. *See Vivian*, 171 Idaho at, __, 518 P.3d at 382.

## IV.    CONCLUSION

For the reasons stated above, the decision of the district court upholding the magistrate court's denial of Plata's motion to suppress the blood draw evidence is reversed. The case is remanded to the district court to implement this decision.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN, concur.